**Kathleen M. GORMAN, as Executrix of the Estate of James P. Cleary, Deceased, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

Civ. No. 26769.

United States District Court
E. D. Michigan, S. D.

July 25, 1968.

———◆———

Cross, Wrock, Miller, Vieson & Kelley, Detroit, Mich., for plaintiff.

Lawrence Gubow, U. S. Atty., Detroit, Mich., for defendant.

## OPINION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

KAESS, District Judge.

This is an action brought by the executrix of the decedent James P. Cleary for the refund of an alleged overpayment of Federal estate taxes. It is claimed that the Commissioner of Internal Revenue wrongfully included in decedent's gross estate the value of a life insurance policy through a misapplication of Section 2035 of Internal Revenue Code of 1954, 26 U.S.C. (I.R.C.1954) § 2035. That section provides:

"§ 2035. *Transactions in contemplation of death*

(a) General rule.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death.

(b) Application of general rule.— If the decedent within a period of 3 years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a general power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death

within the meaning of this section and sections 2038 and 2041 (relating to revocable transfers and powers of appointment); but no such transfer, relinquishment, exercise, or release made before such 3-year period shall be treated as having been made in contemplation of death."

The plaintiff moves for summary judgment and for the purpose of this motion has set forth a stipulation of facts, a copy of which is attached to this opinion (see Exhibit A). Since the payment of the premium is in question, the court, for the purpose of this motion, will assume the premium to have been paid by the deceased.

The government asserts that the procurement of the insurance policy by the decedent for his wife was a "transfer" of the policy within the meaning of Section 2035 of the Internal Revenue Code of 1954, and the total proceeds from the policy, as a result of payment of the premium, is includable in the estate of the decedent. The government relies upon Revenue Ruling 67–463, Internal Revenue Bulletin 1967–52, 15 as authority for its position (see attached Exhibit B). Under this ruling, the portion of death proceeds which is attributable to the premiums paid by the insured is includable in his gross estate under Section 2035. This ruling is startling in that it completely ignores the legislative history and intent relating to the elimination of the premium payment test from the Code.

The announced position of the Service in that an amount of the insurance proceeds which bears the same ratio to the total proceeds as the premium paid in the last three years bears to the total premium paid on the policy should be included in the decedent's gross estate pursuant to Section 2035(a) is not a new view among District Directors.[1] And applying this rule, the $50,000 proceeds would be included in the decedent's gross estate. At one time this position had

1. Brown & Sherman, "Payment of Premiums as Transfers in Contemplation of Death", 101 Trusts & Estates 790 (1962).

widespread acceptance.[2] However, at present it is severely criticized and it is generally felt, and properly so, that the Service is attemping to administratively adopt in part the "premium payment test" which was deleted from the Revenue Laws by the enactment of the 1954 Code.

In order to come to this conclusion, it is necessary to brief by review the estate tax treatment of life insurance prior to the enactment of the 1954 Code. The estate tax provision specifically applicable to life insurance proceeds[3] provided for the inclusion of life insurance proceeds in the gross estate of the insured if:

(a) The proceeds were payable to the insured's personal representative.

(b) The insured possessed at his death any incidents of ownership, exercisable either alone or in conjunction with any other person.

(c) The insured paid the premiums directly or indirectly (if the sole basis of the inclusion of the life insurance proceeds in the insured's gross estate was the payment of premiums and he had not paid all the premiums, then only that portion of the proceeds was includable that corresponds to the portion of the premium he had paid.[4]

However, Section 2042 of the 1954 Code, the estate tax provision now specifically applicable to life insurance, eliminates the premium payment test as a ground for inclusion and brings into the category of incidents of ownership of the policy a reversionary interest in the insured, whether arising by the express terms of the policy or other instrument, or by operation of law, if the value of the reversionary interest exceeds 5 per cent of the value of the policy immediately before the insured's death. The majority of the House Ways and Means Committee justified the elimination of the premium payment test upon the ground that this put life insurance on the same footing as other property, since other property is not taxed to a decedent's estate, if he completely parted with the property during his life, merely because he paid the consideration for it.[5] And the position of Congress was reaffirmed in 1957 when it rejected a Treasury attempt to introduce a modified form of premium payment test in the 1954 Code.[6]

However, as the regulations promulgated under Section 2042 specifically indicate, the proceeds of life insurance policies may under certain circumstances be included in a decedent's gross estate under other sections of the Code. Regulations Section 20.2042–1(a) (2) provides in part as follows:

"(2) Proceeds of life insurance which are not includible in the gross estate under section 2042 may, depending on the facts of the particular case, be includible under some other section of Part III of Subchapter A of Chapter 11. For example, if the decedent possessed incidents of ownership in an insurance policy on his life but gratuitously transferred all rights in the policy in contemplation of death, the proceeds would be includible under section 2035. * * * "

2. Brown & Sherman, supra, 790; Mannheimer, Wheeler & Friedman, "Gifts of Life Insurance by the Insured", 13th N.Y.Inst. on Fed.Taxation, p. 260 M. 276; Schwartz, "Life Insurance Planning", 35 So.Calif.Law Rev. p. 11 N. 52.

3. 1939 I.R.C. § 811(g).

4. Casner, Estate Planning 322 (3rd Ed. 1961).

5. H.Rep.No. 1337, 83d Cong., 2d Sess., A316, A317 (1954), U.S.Code Cong. & Admin.News 1954, p. 4025.

6. H.R. 8381, 85th Cong., 1st Sess. 56 (1957). See "List of Substantive Unintended Benefits and Hardships and Additional Problems for the Technical Amendments Bill of 1957" item 27, page 12, transmitted on Nov. 7, 1956 to Subcommittee on Internal Revenue Taxation of the House Committee on Ways and Means, by Treasury and Staff of Joint Committee on Internal Revenue. Taxation.

With the legislative history of Section 2042 in mind, we may now turn to a consideration of Section 2035 of the 1954 Code, which has been said may be used as a vehicle to reinstate in part the premium payment test which as indicated above was specifically rejected by Congress when the 1954 Code was enacted.[7] This section provides in part as follows:

"(a) *General Rule.*—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death."

The specific interpretative issue is what is the value of the property transferred by the decedent for purposes of the above quoted section when he pays in contemplation of death directly or indirectly premiums on a life insurance policy.

■ Once it is determined that an interest in property has been transferred in contemplation of death, the amount included in the decedent's gross estate is the value of the interest transferred as of the applicable valuation date.[8] Since transfers in contemplation of death are to be valued at a time subsequent to the actual transfer, situations arise where specific property or money is transferred in contemplation of death but the donee disposes of the property prior to the donor's death. If the transfer is made within 3 years of the transferor's death, the question arises whether the amount included in the decedent's gross estate should be the fair market value, as of the applicable valuation date, of the specific property transferred or whether the fair market value of the proceeds from the property transferred which are retained by the transferee at the transferor's death. However, if the transferee has made improvements or additions to the property, any resulting enhancement in the value of the property is not considered in ascertaining the value of the gross estate. Similarly, neither income received subsequent to the transfer nor property purchased with such income is considered.

Thus, the question of how much is included in a decedent's gross estate resulting from the payment of insurance premiums in contemplation of death is merely one phase of the broader question raised above. This categorization of the question relating to insurance proceeds appears to be in accord with Congress' general approach towards this type of property. As indicated earlier, Congress indicated at the time the 1954 Code was enacted, that it intended life insurance to be treated like other property.

The Service's position, as set forth in the Ruling, is not supported in law. An analysis of the cases relied upon are clearly distinguishable from that upon which the Service would hope they hold.

In The Chase National Bank of City of New York v. U. S., 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405 (1929), the opinion of the court did not demonstrate that transfer occurs with the payment of each premium, in fact it was not even considered by the court. The question before the court was whether the federal estate tax imposed on insurance policies owned by the decedent, but payable to his wife, was a direct tax on property and therefore violative of the apportionment provision of the federal constitution, the taxpayer's argument being that it was a tax on property because the beneficiary's interest in the policies was not transferred to her from the decedent, but from the insurer, and hence there was no transfer or privilege being taxed.

7. Marvin Goodson, "Are Insurance Proceeds Gifts in Contemplation of Death?" 103 Trusts and Estates 25, 26 (1965), Yohlin and Bomze, "Some Unresolved Gift and Estate Tax Problems of the Unfunded Irrevocable Insurance Trust," 41 Taxes 521, 533 (1963). Brown and Sherman, supra, at 790.

8. Federal Tax Regulations Section 20.-2035-1(e).

The court held that the tax was not a tax on the proceeds, but rather a tax on privilege of transferring property of a decedent at death. The court never considered the relationship of premiums with proceeds.

The Service also cites Allan S. Lehman v. Commissioner, 109 F.2d 99, cert. denied, 310 U.S. 637, 60 S.Ct. 1080, 84 L.Ed. 1408 (1940), as one who furnishes consideration for a trust is the owner or settlor. This case is cited without comment and seemingly without connection to the substance of the Ruling. This is an old recriprocal trust case and held that a transfer by the decedent's brother, having been paid for and brought about by the decedent, was in substance a "transfer" by the decedent, and the property so transferred formed part of his taxable estate to the extent that the decedent had power "to alter, amend or revoke" the enjoyment of it, to the extent of $150,000 or total amount of the trust.

For the reasons herein to be discussed, Liebmann v. Hassett, 148 F.2d 247 (1st Cir., 1945), also cited, should not be regarded as authority for the Service's alleged position. In the *Liebmann* case the decedent transferred a life insurance policy to his wife in December, 1935, and died in October, 1937. Subsequent to the transfer, his wife paid two annual premiums. The wife conceded that the policy had been transferred by her husband in contemplation of death, but argued that there should be included in her husband's gross estate only the cash surrender value at the time of the assignment. The governing statutory provision was the Revenue Act of 1926, predecessor of the present Section 2035(a).[9] This section of the Revenue Act of 1926 was substantially identical to Section 2035(a) quoted earlier. The court indicated that the statute required the value of the property transferred to be determined as of the time of the decedent's death, without regard to the value of the gift when received. Further, that such property transferred (referring to the insurance policy in that case) is in the same category as it would have been if the transfer had not been made and the decedent continued to own it up to the time of his death.[10] However, the crucial portion of the opinion relates to the court's reasons for agreeing with the district court that the proportionate part of the insurance purchased by the last two premiums paid by Mrs. Liebmann should be excluded from the gross estate. The crux of the court's holding appears to be its belief that it would be inconsistent to hold that the insured could transfer in contemplation of death any greater portion of the asset than he is regarded as having "taken out" under section 302(g) of the Revenue Act of 1926. Section 302(g) made life insurance payable to the named beneficiaries includable to the extent it was "taken out" by the decedent. The amount "taken out" by the decedent was considered to be an amount which bore the same ratio to the proceeds as the premiums he paid bore to the total premiums[11] paid on the policy. If the First Circuit's technique for analyzing the *Liebmann* case is applied to cases involving premium payments in contemplation of death, it would seem to follow that only the amount of premiums paid within three years of the decedent's death should be included in his gross estate since this would be the amount which would have been includable if the transfer had not been made, assuming all incidents of ownership were transferred at least 3 years prior to his death. Further, the *Liebmann* case is not authority for the proposition that payment of premiums transfer an interest in an insurance policy in absence of a provision such as

---

9. Section 302(c) of the Revenue Act of 1926.

10. The court indicated that this was pointed out in Igelheart v. Commissioner of Internal Revenue, 77 F.2d 704, 711 (5th Cir. 1935). In addition it found support for its position in Snyder v. Helvering, 63 App.D.C. 591, 69 F.2d 377 (D.C.Cir. 1934), Schoenheit v. Lucas, 44 F.2d 476 (4th Cir. 1930).

11. T.D. 5032, issued January 10, 1941.

Section 302(g) of the Revenue Act of 1926 and the regulations promulgated thereunder. As clearly indicated in its opinion, the court relied on Section 302 (g) and the regulations promulgated thereunder to equate the payment of premiums by the decedent's wife to an addition or improvement made by her to the property transferred in an amount equal to a pro rata amount of the proceeds. If it is determined that an addition or improvement is made by a transferee of property transferred in contemplation of death, it will not be included in the decedent's gross estate.[12]

The last case, Scott v. Commissioner of Internal Revenue, 374 F.2d 154 (1967), discussed by the Ruling is distinguishable from the instant case as well as the Ruling. In the *Scott* case the court was concerned not with the extent to which the policy had been transferred through the payment of premiums but with the degree to which the policy was owned by the insured at the time of death. The court was required to look at the California law to determine the ownership of the decedent in the policy and found that California, a community property state, determined ownership of life insurance policies based upon premium payment test. The court was not faced with federal law in applying the premium test but merely faced with the question of applying local law. On page 157 the court said:

"He also shows that, even though the Congress, in 1954, eliminated the 'payment of premiums' test and embodied an 'incidents of ownership' test in section 2042, which appears to be very broad, the Treasury regulations and court decisions give effect to state law in determining ownership and therefore includibility. Since 1948, 'state property rules control the estate taxation of community property life insurance' (9 Stan.L.Rev. at p. 245)."

In applying the California law, which the court adopted, it stated on pages 159 and 160:

"But the courts of California have not so held. On the contrary, they determine what portion of the proceeds is community property by applying to the total proceeds a fraction of which the numerator is the total amount of premiums paid from community funds and the denominator is the total amount of premiums paid during the life of the policy. The balance is separate property of the husband."

Michigan, not being a community property state, does not adopt the premium payment test and should not be considered as a basis for inclusion.

■ This court is not in accord with the conclusion arrived at by the Ruling. Aside from creating a chaotic crisis in estate planning,[13] the Ruling is unfounded in either the statute or the case law, and any reliance placed upon the Ruling by service must be rejected by this court.

■ Payment of premium test being specifically deleted may not be incorporated through administrative tactics. This court will not legislate, nor shall the Service, in an area specifically reserved to Congress. The fact that a tax break in estate planning may arise from the deletion of the premium payment test is no reason to argue that the benefit should not inure to the taxpayer.

Since it is clear that the Ruling is not determinative of the premium payment question, the question remains what are the possible legal theories which might be used to resolve this issue. In making an analysis of this type, it is necessary to keep in mind that Section 2035(a) is a transfer type section. Therefore, our focus must at all times be directed to what was in fact transferred by the de-

12. Federal Tax Regulations section 20.-2035-1(e).

13. Examples of other troublesome areas as a result of the Ruling include: an individual who works for a corporation for forty years and pays an annuity renewable each year—should the proceeds be included; when loans are made on the policy; prepaid premiums; premiums paid by a third party.

cedent when he paid a premium in contemplation of death.

The first case which will be considered in an effort to demonstrate the available alternative theories is Humphrey's Estate v. Commissioner, 162 F.2d 1 (5th Cir. 1947). The decedent in that case transferred money to his sons in contemplation of death, half of which was lost in a speculative venture prior to his death. The petitioner claimed only that part of the gift which the donees received at the donor's death should be included in the donor's gross estate. This claim was rejected by the Tax Court. The Fifth Circuit held on appeal that for the purposes of the 1939 Code predecessor of Section 2035, what is to be valued at the time of the decedent's death is the very property which the decedent transferred. The value of the cash is the same at the date of death though it is not in the donee's possession. Although it has been concluded that "This decision conflicts with the only other case [Howard v. United States, 125 F.2d 986 (5th Cir. 1942)] expressly dealing with the valuation of a gift to be included in the gross estate when the individual donee has disposed of the original property and reinvested the proceeds," [14] this is not believed to be necessarily so.

One distinguishing factor is that in *Humphrey Estate* the donor's transfer was irrevocable while in *Howard* it was not. The result reached by the Fifth Circuit in *Howard* has been felt to be a sensible one where the original property can be traced into property held by the transferee at the transferor's death.[15] It has also been pointed out that "This result can perhaps be squared with the language of the statute which requires the property transferred to be included in the gross estate upon the theory that where the transfer is revocable the property is not transferred until the transferor's death, so that the transferred

property is the property in the transferee's hands at the time of transferor's death." As noted earlier, in cases involving transfers in trust, it has generally been held that it is the value of the trust res at the time of the donor's death which is included in his gross estate rather than the value of the particular asset which comprise it at the time of the transfer. Although both the trust cases and *Howard* hold that the value of the specific asset in the hands of the donee at the donor's death be included in the donor's gross estate, they each represent the application of a legal theory which is distinctive from the one applied in *Humphrey Estate* and from each other.

The following is a summary of the three legal theories referred to above:

1. *Specific Asset Theory*—The amount included in the decedent's gross estate is the fair market value, at the estate tax valuation date, of the specific asset transferred by decedent in contemplation of death regardless of any disposition of it by the donee prior to the donor's death.

2. *Revocable Transfer Theory*—The amount included in the decedent's gross estate is the fair market value at the estate tax valuation date of the proceeds of any asset transferred in contemplation of death which the donee retains at the donor's death since the transfer is considered to be completed at death.

3. *Trust Theory*—The amount includible in the decedent's gross estate is the value of the trust corpus transferred in contemplation of death, at the estate tax valuation date, since the assets considered to be transferred are not the specific assets comprising the trust corpus but rather the corpus itself.[16]

14. 61 Harv.Law Rev. 365 (1948).

15. Lowdes and Kramer, "Federal Estate and Gift Tax," 436 (2nd Ed.1962).

16. Pavenstedt, "Taxation of Transfers in Contemplation of Death: A Proposal For Abolition", 54 Yale L.J. 70, 89 (1944) (the author concludes that the distinction

In order to apply these court developed rules to determine the amount includible in a decedent's gross estate of his paying premiums on a policy he does not own, it is desirable to further amplify the rights and interests of both the decedent and the beneficiary in the policy (assuming the decedent transferred all the incidents of ownership to the beneficiary at least 3 years before the former's death). In general, when an individual transfers all the incidents of ownership in a life insurance policy, he will not retain the right to pay the premiums on it. Even if he did, one writer has concluded that the right to pay premiums is not an incident of ownership.[17] In addition, it has been concluded that a person other than the owner may pay premiums on the policy only with the owner's consent. If premiums are paid by another in absence of any agreement, the payor is a mere donor and obtains no rights in or to the contract, its value or its proceeds and it is presumed that such payments were made on behalf of the owner. As a purely economic matter, these conclusions seem quite logical. In addition, the gift tax regulations supports the conclusion that this type of analysis should be applied for Federal tax purposes. Regulations section 25.2511–1(h) (8) provides in part as follows:

"* * * the insured has made a gift of the value of the policy or to the extent of the premiums paid, even though the right of the assignee or beneficiary to receive the benefit is conditioned upon his surviving the insured."

Thus, it can be seen that the above quoted regulations adopt the position that what is transferred for gift tax purposes when a premium is paid is the dollar amount of the premium.

Furthermore, one must recognize that life insurance is a very unique type of contractual arrangement between the owner of the policy and the life insurance company. Generally, the policy owner is not under a legal obligation to pay the premiums on the life insurance policy. The company, however, is bound to provide the insurance protection subject to the terms of the policy if the premiums are in fact paid and even if not paid may under certain circumstances be obligated to provide certain insurance benefits to the owner.

The unique nature of insurance contracts and the motivation for purchasing them was considered at the time the 1954 Code was enacted. As indicated, Congress chose to treat property interests in these policies similar to other property. A minority of the House Ways and Means Committee strongly opposed this approach. Their position was summarized in the Committee Reports. The minority position was in part as follows:

"It is sought to justify this change as merely putting life insurance on a par with other property which may be given away free from estate tax if the gift is not made 'in contemplation of death'. But life insurance is not like other property. It is inherently testamentary in nature. It is designed, in effect, to serve as a will, regardless of its investment features. Where the insured has paid the premiums on life insurance for the purpose of adding to what he leaves behind at his death for his beneficiaries, the insurance proceeds should certainly be included in his taxable estate." [18]

Let us now consider the possible application of the *Revocable Transfer Theory, Trust Theory,* and *Specific Asset Theory,* to premium payments made by a decedent within three years of his death. It is concluded that the *Revocable Transfer Theory* should be readily disregarded. This theory is appealing only in situations in which the reason for in-

---

between a trust's corpus and the assets is a tenuous one).

17. Hugh M. MacKay, "Life Insurance in the Estate Plan", 43 B.U.L.Rev. 275 (1962).

18. H.Rep.No. 1337, 83d Cong., 2d Sess. B14, B15 (1954), U.S.Code Cong. & Admin.News 1954, p. 4608.

cluding property in the decedent's estate is that it was a revocable transfer.[19] Generally, payments of insurance proceeds will be irrevocable transfers. Thus, this theory would seem not to apply.

The *Trust Theory* at first blush might appear to be applicable but a close analysis of it demonstrates that it should not be applied to premium payments. It might be argued that by paying premiums directly to the life insurance company the transferor has, in substance, created a form of trust res. Further, that the proceeds of the insurance policy represent in part the appreciation in value of the premiums paid. Thus, a pro rata amount of the proceeds should be included in the decedent's gross estate. However, this argument ignores the vital fact that the "appreciation" of the premium payment does not result from the payment itself. On the contrary, the proceeds result from the nature of the contractual arrangement the owner of the policy has with the insurance company. This contractual right or any portion thereof is not being transferred when a premium is paid. As indicated earlier, the right to pay the premiums generally belongs to the owner of the policy. Thus, payment of the premium by another merely benefits the owner to the extent of the amount of the premium. The right to be able to pay premiums and by doing so also receiving the proceeds existed prior to a premium payment made on a policy which is at least three years old. Therefore, it is concluded that to maintain that the payment of an insurance premium is similar to the transferring of an asset into a trust ignores the essential nature of the insurance contract.

The *Specific Asset Theory* should be applied to payments of insurance proceeds. In substance, what is being transferred when an insurance premium is paid, either directly or indirectly, is the dollar amount of the premium. Section 2035(a), quoted earlier, is a transfer section and purports only to tax the value of the asset transferred in contemplation of death as of the applicable valuation date. Even though the transferee may only receive the proceeds as a result of premium payments of another, it does not necessarily follow that each premium payment transfers a pro rata amount of these proceeds. On the contrary, it appears to be the contractual right in the insurance contract which enables the owner to receive the proceeds. Once it is agreed that this right was not transferred in contemplation of death, it should follow that none of the proceeds should be considered as transferred in contemplation of death.

Since it is clear that payment of insurance premiums within three years of death should not cause a pro rata amount of the proceeds to be included in the payor's gross estate, the question remains what amount if any *should* be so included. The minority position of the House Ways and Means Committee quoted earlier has adopted an extremely narrow view of the purposes for purchasing life insurance. A strong argument can be made that life insurance has many living motives. An individual purchasing life insurance may desire to obtain a certain peace of mind by knowing that his family has been provided for in the event of his death and to relieve himself in whole or in part of the burdens of managing investments which might serve as a substitute for insurance.

Thus, by close analysis of the Code, in light of the history, if anything is to be included in the estate, it should be limited to the value of the asset transferred, namely the premium.

The plaintiff argues that all that can be transferred is what is owned by the decedent and in this case the decedent had no incidents of ownership over the policy. The decedent was not the owner, he could not surrender, cancel or change the beneficiary, assign or revoke an assignment, pledge the policy for a loan or obtain from the insurer a loan against the

19. Internal Revenue Code § 2038.

surrender value of the policy. In other words, the economic value to the insured was worthless. However, the courts have applied " 'incidents' of ownership" test irrespective of circumstances which may render the retained "economic value" worthless to the insured. Noels Estate v. Commissioner, 39 T.C. 466 (1966) Reversed 332 F.2d 950 (1964), rev. 380 U.S. 678, 85 S.Ct. 1238, 14 L.Ed.2d 159 (1965).

Predicated upon the stipulated facts that the premium in this case was paid by the decedent, it is unnecessary to consider the argument of the plaintiff on the issue of there being no asset transferred and the policy should not be included. It is conceded that the amount of the premium paid by the decedent was transferred. Thus we have a gift of the payment of the premium by the decedent. And by adopting our reasoning, assuming arguendo that the insurance policy be included, we limit the amount of the policy to be included to the premium paid. Therefore, under either the plaintiff's theory that decedent had no interest in the policy other than payment of the premium, or under the government's theory that the plaintiff had interest in the policy and did transfer the policy, we are still limited to an amount equal to the premium.

■ Faced only with the issue of the value of the premium paid by the decedent, it is the court's opinion that the plaintiff has not sustained the burden that the premium was not transferred in contemplation of death. Thus the value of the premium is includable in the estate of the decedent.

An order in accordance with this opinion may be submitted by the parties.

### EXHIBIT A

### STIPULATION OF FACTS

1. This action is brought by Kathleen M. Gorman (formerly Kathleen M. Cleary) who is the duly appointed qualified and acting executrix of the Last Will and Testament of James P. Cleary, a/k/a James Peter Cleary, Deceased, against the Defendant, United States of America, to recover federal estate taxes in the amount of Six Thousand Eight Hundred ($6,800.00) Dollars and interest paid thereon in the amount of One Thousand Two Hundred Ninety Eight ($1,298.70) Dollars and Seventy Cents, a total of Eight Thousand Ninety Eight ($8,098.-70) Dollars and Seventy Cents. Plaintiff is a citizen of the United States and jurisdiction is conferred upon this Court by 28 U.S.C. Section 1346(a) (1). The total amount for which recovery is sought is Eight Thousand Ninety Eight ($8,098.-70) Dollars and Seventy Cents, together with interest thereon at the rate of six (6%) per cent from September 6, 1962.

2. James P. Cleary (hereinafter called the decedent) died on March 25, 1958, a resident of the City of Grosse Pointe Shores, County of Wayne, State of Michigan, leaving a Last Will and Testament which was duly admitted to probate in the Probate Court for the County of Wayne, State of Michigan, to which jurisdiction in that behalf belonged, and on April 4, 1958 letters testamentary were duly issued out of said Court to his wife, Plaintiff herein, Kathleen M. Gorman (then known as Kathleen M. Cleary.)

3. On or about June 24, 1959, Plaintiff duly executed and filed with the District Director of Internal Revenue of the United States of America for the District of Michigan the federal estate tax return for the Estate of James P. Cleary, Deceased. The federal estate tax shown to be due and payable on said return was Nine Thousand Ninety Dollars and Forty Four Cents ($9,090.44), and said amount was paid by Plaintiff to the duly appointed, qualified and acting District Director of Internal Revenue for the District of Michigan at the time of filing said return.

4. Upon audit of the federal estate tax return of the estate, said District Director of Internal Revenue determined that certain items, upon which no tax had been initially paid by the Plaintiff at the time of filing said federal estate tax return on or about June 24, 1959, were includable in the gross estate of the decedent and that one of said items so includable was the proceeds of a certain life insurance

policy, No. N 1 954 721, in the amount of Fifty Thousand ($50,000.00) Dollars issued by Aetna Life Insurance Company and dated June 12, 1957, insuring the life of said decedent. Said District Director of Internal Revenue on or about August 31, 1962 issued a deficiency assessment of federal estate tax in the amount of Eight Thousand One Hundred Thirteen ($8,113.21) Dollars and Twenty One Cents, plus interest thereon in the amount of One Thousand Five Hundred Forty Nine ($1,549.51) Dollars and Fifty One Cents, a total assessment of Nine Thousand Six Hundred Sixty Two ($9,-662.72) Dollars and Seventy Two Cents.

5. On or about September 10, 1962, Plaintiff paid said total amount of Nine Thousand Six Hundred Sixty Two ($9,-662.72) Dollars and Seventy Two Cents, and on the same date Plaintiff filed with the District Director of Internal Revenue a Claim for refund of that portion of said amount attributable to the inclusion in the gross estate of said decedent of said Aetna Policy No. N 1 954 721, said portion being Eight Thousand Ninety Eight ($8,098.70) Dollars and Seventy Cents, consisting of estate tax of Six Thousand Eight Hundred ($6.800.00) Dollars and interest thereon of One Thousand Two Hundred Ninety Eight ($1,298.70) Dollars and Seventy Cents. More than six months has expired between the filing of such claim for refund and the commencement of this action. This action for recovery of said amount has been timely commenced, and all conditions precedent to the institution of this action have been fulfilled.

6. The only matter in controversy between the parties hereto is whether the proceeds of said Aetna policy No. N 1 954 721 are includable in the gross estate of the decedent pursuant to Section 2035 of the Internal Revenue Code of 1954, as amended, the estate tax paid thereon being Six Thousand Eight Hundred ($6,800.00) Dollars with interest in the amount of One Thousand Two Hundred Ninety Eight ($1,298.70) Dollars and Seventy Cents, a total of Eight Thousand Ninety Eight ($8,098.70) Dol-

lars and Seventy Cents. A true, complete and accurate copy of said policy, marked Exhibit A, is attached hereto and made a part hereof. The proceeds of Aetna policy No. 1 954 720 hereinafter described, a true, complete and accurate copy of said policy marked Exhibit B being attached hereto and made a part hereof, were not included in the gross estate of the decedent by the District Director of Internal Revenue, and no portion of the amount herein in controversy is related to said policy.

7. At all relevant and material times in 1957, Paul J. Keller, Jr. was an agent of the Aetna Life Insurance Company.

8. On May 21, 1957, at the office of Cleary-Shevlin Manufacturing Company in Van Dyke, Michigan, the decedent, in the presence of Paul J. Keller, Jr., who acted as a witness, executed Part 1 of Aetna Life Insurance Company application No. 26159 (Form 091) for a life insurance policy on his life which was to be owned by Cass City Manufacturing Company, of which the decedent was an officer and stockholder. Pursuant to said application, Aetna Life Insurance Company policy No. N 1 954 720 (Exhibit B) was issued.

A copy of said application is attached to Exhibit A and Exhibit B and said copy is a true, complete and accurate copy of the application signed by the decedent on May 21, 1957 except that the handwritten language in the box below Item 8 in which there is printed, "Enter here any additional information or special features", was not such application when decedent signed it.

9. On a date between May 21 and May 25, 1967, at the office of the Aetna Life Insurance Company in Detroit, Michigan Geraldine Curlett, an employee of the Aetna Life Insurance Company, at the instruction of either said Paul J. Keller, Jr., or Frank Mumford, her supervisor at the Aetna Life Insurance Company, wrote in the box below Item 8 on said Part 1 of said application No. 26159, the following language:

"Please issue addl. $50,000 same in all respects—Kathleen M. Cleary, wife

o/w children born of this marriage o/w estate of survivor. Said wife o/w her estate, to be life owner."

The person so instructing her had been authorized and directed by the decedent to cause such additional language to be so written.

10. On May 24, 1957, at the office of Dr. John M. Lesesne in Grosse Pointe, Michigan, a medical examiner employed by the Aetna Life Insurance Company, the decedent underwent a physical examination, answered certain questions, and signed Part 2 of the said application No. 26159.

11. Because of the age of the decedent in 1957 (38 years) and the amount of life insurance for which he had applied, the Aetna Life Insurance Company required two physical examinations. The second physical examination was made by Dr. L. M. Farnum on June 4, 1957 in Grosse Pointe Woods, Michigan, and on that date decedent signed a Part 2 of an additional Aetna Life Insurance Company application form (Form 091). A true, complete and accurate copy of said Part 2 is attached as a part of Exhibits A and B.

12. After receiving the application, the medical reports from Drs. Lesesne and Farnum, and such other information from its own investigation as it required, the home office of the Aetna Life Insurance Company at Hartford, Connecticut issued Policy No. N 1 954 720 (Exhibit B) to Cass City Manufacturing Company and issued Policy No. N 1 954 721 (Exhibit A) to Kathleen M. Cleary. Policy No. 1 954 720 and Policy No. N 1 954 721 are identical except for the name of the owner and beneficiary. Both policies are five-year term policies, non-participating, renewable to age 65 and convertible to age 60. The term "life owner" which appears in both policies means that the person so designated as life owner has the sole right to exercise any and all rights of ownership in said policy during the life of the insured.

13. In 1957, Aetna Life Insurance Company required that before any life insurance policy could become effective an application, consistent in all material respects with the policy, be signed by the insured and be given to Aetna Life Insurance Company. To effectuate this requirement said Paul J. Keller, Jr., either on June 20, 1957 or on a date between June 12, 1957 and June 20, 1957, tendered Form 311 to the decedent for his signature and the decedent signed said Form 311 and returned said form to him. A true, complete and accurate copy of Form 311 as so signed as attached to Exhibit A.

14. On June 20, 1957, both Policy No. N 1 954 720 (Exhibit B) and Policy No. N 1 954 721 (Exhibit A) were delivered to the office of the decedent and on the same day the premium check for Policy No. 1 954 720, drawn by Cass City Manufacturing Company, was given to said Paul J. Keller, Jr. The premium check for Policy No. N 1 954 721 was mailed to said Paul J. Keller, Jr. on June 24, 1957 and was received by said Paul J. Keller, Jr. on the following day.

15. The right to exercise all options and privileges described in Policy No. 1 954 721 (Exhibit A) and to agree with the Aetna Life Insurance Company to any change in, amendment to, or cancellation of the policy was at all times on and after the date the policy went into effect vested solely in Kathleen M. Cleary, wife of the decedent. A similar right under Policy No. 1 954 720 was vested in Cass City Manufacturing Company on and after the date the policy went into effect. The decedent did not, at any time on or after the date the policy went into effect, have the right to exercise any options or privileges in or under said policies or to agree with Aetna Life Insurance Company to any change, in amendment to, or cancellation of such policies. The decedent did not and could not, at any time on or after the date the policy went into effect assign the policy or the proceeds thereof to Kathleen M. Cleary.

16. This Stipulation of Facts does not set forth the identity of the person who paid the premium on Policy No. 1 954 721 because the parties hereto have not heretofore been able to determine who in fact did pay such premium.

No. N 1 954 721                                    Age 39

*(herein called the Company)*

## HEREBY AGREES TO PAY

FIFTY THOUSAND                                                  DOLLARS

*(herein called the sum insured)*

immediately upon receipt at its Home Office of due proof of the death of

JAMES PETER CLEARY

*(herein called the insured)*

within the term of FIVE YEARS, ending on the       TWELFTH       day of

JUNE                 19 62 at five o'clock P. M., to the beneficiary, Kathleen
M. Cleary, wife of the insured, if said wife survives the insured, otherwise to
the children born of the marriage of the insured and said wife who survive the in-
sured, equally or the survivor, or if none survives the insured to the executors
or administrators of the survivor of the said beneficiaries.

 

 

This policy is issued and accepted subject to all the conditions, benefits and
privileges described on the following pages, which are hereby made a part of
this contract.

*IN WITNESS WHEREOF* the *ÆTNA LIFE INSURANCE COMPANY*
has caused this policy to be executed at Hartford, Connecticut, this
TWELFTH         day of   JUNE            19 57 , which is the date of issue
of this policy.

James B. Stimson                                    Henry S Beers
    *Secretary.*                                              *President.*

*Registrar.*

FIVE YEAR TERM.     PREMIUMS PAYABLE WHOLE TERM OR UNTIL PRIOR DEATH.
RENEWABLE TO AGE SIXTY-FIVE.     CONVERTIBLE TO AGE SIXTY.     NON-PARTICIPATING.

34529
4-'57                                                          N. P. 5 YR. R. & C. TERM

EXHIBIT A  (Continued)

**1**
**Premiums and when payable**

*The Foregoing Agreement is made in consideration of the* ANNUAL *premium of* FOUR HUNDRED THREE *Dollars and* NO *Cents to be paid to the Company on or before the* 12TH *day of* JUNE *in each and every year during the term of Five years from the date hereof or until the prior death of the insured.*

**2**
**Who may exercise privileges**

*During the lifetime of the insured, the right to exercise all options and privileges described herein, and to agree with the Company to any change in, amendment to, or cancellation of this policy shall vest alone in the life owner (hereinafter so called) designated as follows:* Kathleen M. Cleary, wife of the insured, said wife's executors or administrators.

**3**
**How beneficiary may be changed**

The beneficiary may be changed as often as desired by filing a written request therefor at the Home Office of the Company accompanied by the policy for endorsement and such change shall take effect as of the date of execution of such request, without prejudice to the Company on account of any payment made by it before receipt of such request, but only if it has been endorsed upon the policy. The interest of the beneficiary shall be subject to any assignment of this policy made by the life owner.

If any beneficiary does not survive the insured, the interest of such beneficiary shall vest in the life owner alone unless otherwise provided herein.

**4**
**How premiums are payable**
**Grace period**

All premiums shall be paid in advance at the Home Office of the Company, or to its authorized agent, in exchange for a receipt signed by its Secretary or Assistant Secretary and countersigned by the agent. If any such premium is not paid when due, this policy shall cease, except that a grace of thirty-one days, during which the policy shall remain in full force, will be allowed for the payment of any premium after the first. If death occurs within the grace period, the premium, if unpaid, will be deducted from the amount payable hereunder.

This policy shall not become effective until the first premium upon it is paid during the good health of the insured, and when so paid this policy shall be deemed effective from the date of issue as shown on the first page hereof.

**5**
**How premiums may be paid annually, semi-annually, or quarterly**

The Company will accept premiums for annual, semi-annual, or quarterly periods at its published rates at the date of issue of this policy, provided that before any change is made due written request shall be made to the Company before the end of the grace period.

**6**
**How term may be renewed**

If this policy is in force at the end of its term it may be renewed without further evidence of insurability for successive terms thereafter as follows: Renewal terms commencing at insuring ages 60 or under shall be for 5 years each; renewal terms commencing at insuring ages 61, 62, 63 or 64 shall be for 4, 3, 2, or 1 year respectively; no further renewal terms shall commence after insuring age 64.

Renewal of this policy shall be effected by and subject to the payment of premiums in the same manner and under the same conditions as in the preceding term; the amount of the premium payable during each renewal term shall be based on the insuring age at the beginning of such term, and shall be determined from the following table.

## EXHIBIT A (Continued)

### TABLE OF PREMIUMS FOR INSURANCE OF $1,000

| Insuring Age Beginning of Renewal Term | Annual Premium | Insuring Age Beginning of Renewal Term | Annual Premium | Insuring Age Beginning of Renewal Term | Annual Premium |
|---|---|---|---|---|---|
| 20 | $5.44 | 35 | $6.81 | 50 | $16.61 |
| 21 | 5.50 | 36 | 7.07 | 51 | 17.94 |
| 22 | 5.55 | 37 | 7.35 | 52 | 19.39 |
| 23 | 5.60 | 38 | 7.69 | 53 | 20.96 |
| 24 | 5.65 | 39 | 8.06 | 54 | 22.66 |
| 25 | 5.69 | 40 | 8.49 | 55 | 24.50 |
| 26 | 5.73 | 41 | 8.96 | 56 | 26.55 |
| 27 | 5.78 | 42 | 9.50 | 57 | 28.76 |
| 28 | 5.84 | 43 | 10.10 | 58 | 31.19 |
| 29 | 5.91 | 44 | 10.78 | 59 | 33.83 |
| 30 | 6.01 | 45 | 11.52 | 60 | 36.71 |
| 31 | 6.10 | 46 | 12.33 | 61 | 38.57 |
| 32 | 6.24 | 47 | 13.25 | 62 | 40.54 |
| 33 | 6.41 | 48 | 14.25 | 63 | 42.61 |
| 34 | 6.59 | 49 | 15.38 | 64 | 44.79 |

Semi-annual, quarterly and monthly premiums will be calculated on the basis of 51 per cent., 26 per cent. and 8¾ per cent., respectively, of the annual premiums shown in the above table.

**7**
**How policy may be exchanged for insurance of another kind**

While this policy is in force and before the anniversary nearest the insured's sixtieth birthday, it may upon application be exchanged, without further evidence of insurability, for a level premium whole life or endowment policy for an amount of insurance not in excess of the amount of this policy.

THE NEW POLICY

(1) Shall bear the date of exchange and shall be issued at the regular premium for the then attained age of the insured, or

(2) Shall, if exchanged within the original term of five years, be dated back to the same date as this policy and be issued at the same age as this policy. In this case payment must be made of (a) the difference between the premiums already paid hereon, for an amount of insurance equalling that of the new policy, and those that would have been required under the new policy, with interest at five per cent. compounded annually, or (b) the cash value under the new policy if it should be greater.

The new policy shall be issued on any plan in use at the time of its date and at the then regular premium rate for the class in which the insured is now placed.

If this policy contains an Additional Indemnity Provision or a Total and Permanent Disability Provision, the new policy will be issued with such similar provision, not more liberal than contained herein, as may be elected from those customarily issued by the Company (at the date the new policy bears) with the plan of insurance taken.

**8**
**How policy may be reinstated**

Within five years after default in any premium payment, if this policy has not been surrendered, it may be reinstated upon evidence of insurability satisfactory to the Company and by payment of arrears of premiums with interest compounded at each anniversary at the rate of five per cent. per annum.

**9**
**How insurance may be made payable in instalments if desired instead of in one sum**

If it is so elected, the whole or any part of the net sum payable under this policy as a death claim will be paid under one of the modes described below instead of in one sum.

Election shall be made by filing written notice thereof with the Company at its Home Office accompanied by the policy for endorsement and shall take effect as of the date of execution of such notice, but only if the election has been endorsed upon the policy.

In case no election has been made during the lifetime of the insured, the beneficiary may so elect after the death of the insured.

If this policy is assigned, or if a corporation, association, partnership, or estate is the payee, whether as trustee or otherwise, or if the amount of each payment will be less than $10 per payee, then these modes of settlement shall be available only with the Company's consent.

If an election has been made requiring payment under one of these modes, the policy shall be surrendered, if required by the Company, when it becomes a claim, and a supplementary contract will then be issued for the mode elected.

**Interest payments**

MODE 1.   The payment of interest on the sum payable under this mode annually, semi-annually, quarterly, or monthly at the end of each interest period. The amount of interest payment for each $1,000 of such sum will be as follows:

| Annual | $20.00 | Quarterly | $4.96 |
|---|---|---|---|
| Semi-annual | 9.95 | Monthly | 1.65 |

The time during which interest shall be paid shall not exceed the lifetime of one payee except with the Company's consent.

At the death of the payee, the sum payable under this mode with accrued interest will be paid to the executors or administrators of the payee, unless otherwise provided in the election.

## EXHIBIT A (Continued)

**Instalments of fixed amount**

MODE 2. The payment in advance of equal annual, semi-annual, quarterly, or monthly instalments of any fixed amount specified in the election, provided the amount payable in a year is not less than $50 for each $1,000 of the sum payable under this mode, until the sum payable under this mode, with interest thereon at two per cent. per annum and such excess interest as may be declared annually by the Company, is exhausted. At the death of the payee, the balance of the fund will be paid in one sum to the executors or administrators of the payee, unless otherwise provided in the election.

**Instalments for fixed period**

MODE 3. The payment in advance of equal annual, semi-annual, quarterly, or monthly instalments for a fixed period not exceeding thirty years. The amount of instalment for each $1,000 of the sum payable under this mode is shown in Table B. At the death of the payee, the present value of any unpaid instalments commuted on the basis of two per cent. compound interest per annum will be paid in one sum to the executors or administrators of the payee, unless otherwise provided in the election.

### TABLE B

| TERM OF INSTALMENT PAYMENTS | AMOUNT OF INSTALMENT | | | | TERM OF INSTALMENT PAYMENTS | AMOUNT OF INSTALMENT | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | ANNUAL | SEMI-ANNUAL | QUARTERLY | MONTHLY | | ANNUAL | SEMI-ANNUAL | QUARTERLY | MONTHLY |
| YEARS | | | | | YEARS | | | | |
| 1 | $1,000.00 | $502.46 | $251.86 | $84.09 | 10 | $109.14 | $51.84 | $27.49 | $9.18 |
| 2 | 504.95 | 253.73 | 127.17 | 42.46 | 15 | 76.30 | 38.34 | 19.22 | 6.42 |
| 3 | 339.95 | 170.82 | 85.62 | 28.59 | 20 | 59.96 | 30.15 | 15.10 | 5.04 |
| 4 | 257.47 | 129.37 | 64.85 | 21.65 | 25 | 50.22 | 25.23 | 12.65 | 4.22 |
| 5 | 208.00 | 104.52 | 52.39 | 17.49 | 30 | 43.77 | 22.00 | 11.03 | 3.68 |

**Instalments for fixed period and life thereafter**

MODE 4. The payment in advance of equal annual, semi-annual, quarterly, or monthly instalments for a fixed period of years and for as long thereafter as the payee lives. The amount of monthly instalment for each $1,000 of the sum payable under this mode is shown in Table C, and depends upon the sex and age of the payee taken as of the nearest birthday at the time the first instalment becomes due. To determine the amount of annual, semi-annual, or quarterly instalments multiply the monthly instalment by 11.7, 5.95 or 2.98 respectively. At the death of the payee, the present value of any unpaid instalments commuted on the basis of two per cent. compound interest per annum will be paid in one sum to the executors or administrators of the payee, unless otherwise provided in the election.

### TABLE C

| AGE OF PAYEE | | MONTHLY INSTALMENTS | | | | AGE OF PAYEE | | MONTHLY INSTALMENTS | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| MALE | FEMALE | 60 MONTHS | 120 MONTHS | 180 MONTHS | 240 MONTHS | MALE | FEMALE | 60 MONTHS | 120 MONTHS | 180 MONTHS | 240 MONTHS |
| 6 and under | 11 and under | $2.35 | $2.34 | $2.33 | $2.32 | 44 | 49 | $3.78 | $3.74 | $3.67 | $3.58 |
| 7 | 12 | 2.36 | 2.35 | 2.34 | 2.33 | 45 | 50 | 3.86 | 3.8. | 3.74 | 3.63 |
| 8 | 13 | 2.38 | 2.37 | 2.36 | 2.35 | 46 | 51 | 3.94 | 3.88 | 3.81 | 3.69 |
| 9 | 14 | 2.40 | 2.39 | 2.38 | 2.37 | 47 | 52 | 4.02 | 3.95 | 3.88 | 3.74 |
| 10 | 15 | 2.42 | 2.41 | 2.40 | 2.39 | 48 | 53 | 4.11 | 4.03 | 3.95 | 3.80 |
| 11 | 16 | 2.44 | 2.43 | 2.42 | 2.41 | 49 | 54 | 4.21 | 4.14 | 4.02 | 3.86 |
| 12 | 17 | 2.46 | 2.45 | 2.44 | 2.43 | 50 | 55 | 4.30 | 4.25 | 4.10 | 3.92 |
| 13 | 18 | 2.48 | 2.47 | 2.46 | 2.45 | 51 | 56 | 4.41 | 4.32 | 4.18 | 3.98 |
| 14 | 19 | 2.50 | 2.49 | 2.48 | 2.47 | 52 | 57 | 4.51 | 4.42 | 4.26 | 4.01 |
| 15 | 20 | 2.52 | 2.51 | 2.50 | 2.49 | 53 | 58 | 4.63 | 4.52 | 4.34 | 4.10 |
| 16 | 21 | 2.54 | 2.53 | 2.52 | 2.51 | 54 | 59 | 4.75 | 4.62 | 4.42 | 4.16 |
| 17 | 22 | 2.57 | 2.56 | 2.55 | 2.54 | 55 | 60 | 4.87 | 4.73 | 4.51 | 4.22 |
| 18 | 23 | 2.59 | 2.58 | 2.57 | 2.56 | 56 | 61 | 5.00 | 4.85 | 4.60 | 4.28 |
| 19 | 24 | 2.62 | 2.61 | 2.60 | 2.59 | 57 | 62 | 5.14 | 4.96 | 4.68 | 4.34 |
| 20 | 25 | 2.65 | 2.64 | 2.63 | 2.62 | 58 | 63 | 5.28 | 5.08 | 4.77 | 4.39 |
| 21 | 26 | 2.67 | 2.66 | 2.65 | 2.64 | 59 | 64 | 5.43 | 5.21 | 4.86 | 4.45 |
| 22 | 27 | 2.70 | 2.69 | 2.68 | 2.67 | 60 | 65 | 5.59 | 5.34 | 4.96 | 4.50 |
| 23 | 28 | 2.73 | 2.72 | 2.71 | 2.70 | 61 | 66 | 5.76 | 5.47 | 5.05 | 4.56 |
| 24 | 29 | 2.76 | 2.75 | 2.74 | 2.73 | 62 | 67 | 5.93 | 5.61 | 5.14 | 4.61 |
| 25 | 30 | 2.79 | 2.78 | 2.77 | 2.76 | 63 | 68 | 6.12 | 5.75 | 5.23 | 4.65 |
| 26 | 31 | 2.83 | 2.82 | 2.81 | 2.79 | 64 | 69 | 6.31 | 5.89 | 5.32 | 4.70 |
| 27 | 32 | 2.86 | 2.85 | 2.84 | 2.83 | 65 | 70 | 6.51 | 6.04 | 5.41 | 4.74 |
| 28 | 33 | 2.90 | 2.89 | 2.88 | 2.86 | 66 | 71 | 6.72 | 6.19 | 5.49 | 4.78 |
| 29 | 34 | 2.94 | 2.93 | 2.92 | 2.90 | 67 | 72 | 6.94 | 6.35 | 5.58 | 4.82 |
| 30 | 35 | 2.98 | 2.97 | 2.96 | 2.93 | 68 | 73 | 7.18 | 6.50 | 5.66 | 4.85 |
| 31 | 36 | 3.02 | 3.01 | 3.00 | 2.97 | 69 | 74 | 7.42 | 6.66 | 5.74 | 4.88 |
| 32 | 37 | 3.07 | 3.06 | 3.04 | 3.01 | 70 | 75 | 7.67 | 6.82 | 5.81 | 4.91 |
| 33 | 38 | 3.11 | 3.10 | 3.08 | 3.05 | 71 | 76 | 7.94 | 6.98 | 5.88 | 4.93 |
| 34 | 39 | 3.16 | 3.15 | 3.13 | 3.09 | 72 | 77 | 8.22 | 7.14 | 5.95 | 4.95 |
| 35 | 40 | 3.21 | 3.20 | 3.17 | 3.13 | 73 | 78 | 8.51 | 7.29 | 6.01 | 4.97 |
| 36 | 41 | 3.26 | 3.25 | 3.22 | 3.18 | 74 | 79 | 8.81 | 7.45 | 6.07 | 4.98 |
| 37 | 42 | 3.32 | 3.30 | 3.27 | 3.22 | 75 | 80 | 9.12 | 7.60 | 6.12 | 5.00 |
| 38 | 43 | 3.38 | 3.36 | 3.32 | 3.27 | 76 | 81 | 9.44 | 7.75 | 6.16 | 5.01 |
| 39 | 44 | 3.44 | 3.41 | 3.38 | 3.32 | 77 | 82 | 9.78 | 7.89 | 6.21 | 5.02 |
| 40 | 45 | 3.50 | 3.47 | 3.43 | 3.37 | 78 | 83 | 10.12 | 8.03 | 6.24 | 5.02 |
| 41 | 46 | 3.56 | 3.54 | 3.49 | 3.42 | 79 | 84 | 10.48 | 8.16 | 6.28 | 5.03 |
| 42 | 47 | 3.63 | 3.60 | 3.55 | 3.47 | 80 | 85 | 10.84 | 8.28 | 6.30 | 5.03 |
| 43 | 48 | 3.70 | 3.67 | 3.61 | 3.52 | and over | and over | | | | |

34529

**Excess interest**      In addition to any interest payments or to any payments for a fixed period of years under these modes of settlement, payments of such excess interest as may be declared annually by the Company will be made.

**Right of withdrawal**      If it is specifically provided in the election, the payee may at any time withdraw under Mode 1 a part or all of the sum payable, under Mode 2 the balance of the fund, or under Mode 3 the present value of the unpaid instalments computed on the basis of two per cent. compound interest per annum.

The Company may defer the payment of any such withdrawal value for a period not exceeding six months from the date of receipt of written request therefor.

All sums payable by the Company under this policy shall be payable at its Home Office. The sum insured will be payable under the terms hereof only upon legal surrender of this policy.

**10**
**Statements in application are representations and not warranties**      All statements made by the insured shall be deemed representations and not warranties, and no statement shall avoid the policy or be used in defense to a claim under it unless it is contained in the written application herefor and unless a copy of such application is attached hereto when issued.

**11**
**Incontestability**      This policy and the application herefor, a copy of which application is attached hereto and made a part hereof, constitute the entire contract between the parties hereto, and it shall be incontestable after it has been in force during the lifetime of the insured for a period of two years from its date of issue except for non-payment of premium.

The incontestability clause shall not apply to any Total and Permanent Disability Provision or any provision for an additional benefit in case of death from accidental means which may be attached hereto.

**12**
**Rule governing if age has been misstated**      If the age of the insured has been misstated any amount payable hereunder shall be such an amount as the premium paid would have purchased at the Company's published rate in use for the correct age at the date of issue of this policy. Age will be admitted on proof satisfactory to the Company.

**13**
**Amount payable in event of suicide**      If the insured shall commit suicide within two years from the date of issue hereof, while sane or insane, the Company will be liable only for an amount equal to the premiums paid in cash hereunder.

**14**
**Policy non-participating**      This policy shall not be entitled to share in the surplus earnings of the Company.

**15**
**Assignments**      No assignment of this policy shall be binding upon the Company unless and until the original or a duplicate thereof is filed at its Home Office. The Company does not assume any responsibility for the validity of an assignment. No assignment of this policy or any interest thereunder made after the death of the insured shall be valid unless the Company consents thereto.

**16**
**Reserve basis**      The reserve for which funds are to be held upon this policy shall be computed on the basis of the Commissioners 1941 Standard Ordinary Mortality Table and two and three-quarters per cent. interest by the full net level premium method.

**17**
**All agreements must be signed by an executive officer**      All agreements made by the Company are signed by its President, Vice-President, Secretary, Assistant Secretary, Treasurer or Assistant Treasurer. No other person can alter or waive any of the conditions of this policy, extend the time for paying a premium or make any agreement which shall be binding upon the Company.

No. N 1 954 721

# Aetna Life

## Virginia Company

## Hartford Connecticut

ON THE LIFE OF

JAMES PETER CLEARY

SUM INSURED ......... $ 50,000.

ANNUAL PREMIUM } $ 403.00

AGE 39

DATE JUNE 12, 1957

Examined by

FIVE YEAR TERM.
UNTIL PRIOR DEATH.
CONVERTIBLE TO AGE SIXTY.

PREMIUMS PAYABLE WHOLE TERM OR
RENEWABLE TO AGE SIXTY-FIVE.
NON-PARTICIPATING.

## CONTENTS

| | Page | Section |
|---|---|---|
| Premiums and when payable | 2 | 1 |
| Who may exercise privileges | 2 | 2 |
| How beneficiary may be changed | 2 | 3 |
| How premiums are payable | 2 | 4 |
| How premiums may be paid annually, semi-annually, or quarterly | 2 | 5 |
| How term may be renewed | 2 | 6 |
| How policy may be exchanged for insurance of another kind | 3 | 7 |
| How policy may be reinstated | 3 | 8 |
| How insurance may be made payable in instalments if desired instead of in one sum | 3 | 9 |
| Statements in application are representations and not warranties | 5 | 10 |
| Incontestability | 5 | 11 |
| Rule governing if age has been misstated | 5 | 12 |
| Amount payable in event of suicide | 5 | 13 |
| Policy non-participating | 5 | 14 |
| Assignments | 5 | 15 |
| Reserve basis | 5 | 16 |
| All agreements must be signed by an executive officer | 5 | 17 |

EXHIBIT B

Application to the Ætna Life Insurance Company. Part 2. (Use black ink only. To be photographed)

Application to the Ætna Life Insurance Company. Part 1. (Use black ink only. To be photographed)

JAMES PETER CLEARY

№ 26159

Form 091. Ed. 12-34

## EXHIBIT C

Application to the Ætna Life Insurance Company.. Part 2. (Use black ink only. To be photographed)

Answers to questions must be made to and written by the Medical Examiner who should see that each answer is *full* and *satisfactory*, either the agent nor any third person be present. If necessary, use space provided under "Additional and Explanatory Remarks."

**9.** Full name of Applicant *James Peter Cleary*

| 10. Have you ever consulted a physician, specialist, or other practitioner for or suffered from any ailment or disease of: | Yes or No | Name of disease | No. of attacks | Began Mo. Yr. | Recovered Mo. Yr. | Results? (Name and address of every physician consulted must be given.) |
|---|---|---|---|---|---|---|
| *a.* Brain or nervous System? | no | | | | | |
| *b.* Heart, Blood Vessels or Lungs? | no | | | | | |
| *c.* Stomach, Intestines, Liver, Kidneys or Bladder? | no | | | | | |
| *l.* Enlarged Glands, Tumors, Goitre or Ulcers? | no | | | | | |
| *g.* Rheumatism or Gout? | no | | | | | |
| *f.* Any other disease or illness or any injury not mentioned above? | yes | Hernia | 3 | 1939 rt | 1941 left | Jennings Hospital all treated & good Dr John B Hartzell |

**g.** Has anyone ever claimed to have found albumin, casts, pus, blood or sugar in your urine? *no*

**h.** Has anyone ever found your blood pressure abnormal or unusual? *no*

**i.** Have you ever had pain or discomfort in the chest or shortness of breath? *no*

**j.** Have you had regular or occasional health examinations? *yes* Date of last? *1956* By Dr. *Glenn Hiller*
Address *Med Arts Bldg., Des Moines*  **k.** Name any impairments ever found *none*

**l.** When and for what reason did you last consult a physician? *none since Louise Questions*

**m.** May any of these physicians be conferred with and disclose facts known to them? *Yes* (Yes or No)

**11. FAMILY RECORD**

| | LIVING Age | Health | DEAD Age | Date of Death | Cause of Death |
|---|---|---|---|---|---|
| Father | | | 63 | 1946 | Cerebral hem |
| Mother | 91 | Good | | | |
| Brothers | 41 33 30 | good good good | | | |
| Sisters | | | | | |

**12.** Have you within the last year lived with or been associated with anyone suffering from tuberculosis? *No* (Explain fully)

**13.** Have you ever been an inmate of any hospital or sanitarium? *no* (State why and when)

**14. a.** Do you use alcoholic beverages in any form? *yes* (State kind, amount and frequency) *Occ small drink*
**b.** Have you at any time used them to intoxication? *no* (State when and how often)

**15. a.** Have you been under any restriction of diet for any cause? *no*
**b.** Have you ever taken insulin? *no* (Give particulars)

**16. a.** Have you ever used opium, chloral, morphine, cocaine or any other narcotic? *no*

**b.** Have you ever taken treatment for alcohol or drug habit? *no* (State when and where)

**c.** Have you been advised within 5 years to submit to a surgical operation? *no*  **d.** Do you contemplate a surgical operation for any cause? *no* (Give particulars)

**17. a.** Have you ever changed your occupation, place of residence, or traveled on account of your health? *no* (Give full particulars with dates)

**b.** Do you intend to change your occupation, or travel or reside in any Country outside the Continental United States of America or Canada? *no* (Give particulars)

**18. a.** When did you last apply for life or health insurance, or for reinstatement thereof? *3 years*
**b.** In what company? *Ætna Life Ins Co.*
**c.** With what result? *accepted as written*

Additional and Explanatory Remarks *10 F. 1944 leg. Carlyle Barrack Pa. Saphenous ligation rt.*

---

### QUESTIONS TO BE ANSWERED WHEN THE APPLICANT IS A WOMAN

**19. a.** Is your menstruation regular and normal? .......... **b.** Have you ever been treated for any disease of womb or ovaries? ............
**c.** Are there any tumors in the breast or any other part of the body? .......... **d.** Have you passed the change of life? ............
**e.** Number of labors? ......... **f.** Were labors normal? ... ..... **g.** Date of last labor? .......... **h.** Have you miscarried and if so from what cause and at what date? ... .......... **i.** Are you now pregnant? ............
**j.** If widow, what was the date and cause of husband's death? .......... **k.** If husband is living what is his name? .......... His occupation ..... .......... His age? ............ His state of health? ..........
His address? ..........

I hereby certify that the above answers and statements are made by me, that they are correctly and fully recorded by the Medical Examiner, and that no material circumstance or information has been withheld or omitted concerning my past and present state of health and habits of life.

Dated at *Chippewa Co to Wards 30* this *4* day of *June* 19 *57*
In Presence of *J M Jaman M.D.*  Applicant must sign here X *James Cleary*
Medical Examiner

Form 091. Ed. 12-'36

EXHIBIT D

## ~~...~~ TO HOME OFFICE
### ~~...~~ UNDERWRITING DIVISION-ISSUE SECTION

Application to the Ætna Life Insurance Company.     Policy No.   N 1 954 721

| | |
|---|---|
| **1. a.** Name of proposed insured<br><br>JAMES PETER CLEARY<br><br>**b.** Residence<br><br>No. 75 Street SO. DEEPLANDS<br>or R. F. D.<br><br>City, town or village . GROSSE POINTE SHORES<br><br>County WAYNE  State MICH<br> or Province<br><br>**2. a.** PLAN<br><br>NON PARTC T 5 YR REN<br><br>Is Disability desired? NO Which Clause? *<br>Is Additional Indemnity desired? NO | **b.** Amount of Insurance $ 50,000. (If a Monthly Income<br>policy, give amount of monthly income desired. $ )<br>**c.** Premium $403.00 Payable how often? ANNUALLY<br>**d.** If a participating policy, the dividends shall reduce the premiums<br> or be paid in cash, unless otherwise requested. (If otherwise, give<br> method)<br><br>**3. a.** To whom is the insurance to be paid at death of proposed in-<br>sured?<br><br>AS SHALL BE PROVIDED IN THE POLICY<br><br>**b.** Give Date of Birth of Beneficiary if premium depends on age.<br><br>Beneficiary born<br> Month  Day  Year<br><br>**c.** Unless otherwise requested, the proposed insured will have the<br> right to exercise loan privileges, if any, and other privileges in the<br> policy during its continuance. (If otherwise, state who shall have<br> these rights)<br><br>AS SHALL BE PROVIDED IN THE POLICY . |

Enter here any special features pertaining to the application.

I hereby certify that the statements and answers in application dated MAY 21, 1957, upon which Policy No N 1954720 was issued, were complete and true when made and that there has been no change in any of the matter inquired about in said application which would make said statements and answers incorrect or incomplete as of the present date.

It is agreed that the acceptance of any policy issued hereon shall constitute a ratification of the manner in which the policy is written and an acknowledgment that the copy of this application and of the aforesaid application, both of which are attached to the policy, constitute a true and correct copy of the application for the policy and that such copy was attached to the policy when issued.

Dated at _____ this 12TH day of JUNE 19 57

(If premiums are to be paid from the funds of a corporation or person other than proposed insured, such corporation or person should sign below.)

The premiums are to be paid from the funds of the undersigned.     _____ Proposed Insured Must sign full name here. _____ Proposed Insured

_Paul J. Keller, Jr._  . . . . . Witness .

**This form must be signed without change before agent delivers policy.**

Form 311 Bd. 8-'50 Orig.

EXHIBIT B

# Ætna Life Insurance Company

## Hartford, Connecticut

No. N 1 954 720                                                                 Age  39

*(herein called the Company)*

## HEREBY AGREES TO PAY

FIFTY THOUSAND                                                                 DOLLARS

*(herein called the sum insured)*

immediately upon receipt at its Home Office of due proof of the death of

JAMES PETER CLEARY

*(herein called the insured)*

within the term of FIVE YEARS, ending on the        TWELFTH        day of
JUNE                19 62  at five o'clock P. M., to the beneficiary, Cass
City Manufacturing Co., a corporation, Cass City, Michigan.

This policy is issued and accepted subject to all the conditions, benefits and privileges described on the following pages, which are hereby made a part of this contract.

IN WITNESS WHEREOF the ÆTNA LIFE INSURANCE COMPANY has caused this policy to be executed at Hartford, Connecticut, this TWELFTH        day of    JUNE            19 57 , which is the date of issue of this policy.

*James B. Stimson*
Secretary.

*Henry S Beers*
President.

————————————Registrar.

FIVE YEAR TERM.    PREMIUMS PAYABLE WHOLE TERM OR UNTIL PRIOR DEATH.
RENEWABLE TO AGE SIXTY-FIVE.    CONVERTIBLE TO AGE SIXTY.    NON-PARTICIPATING.

34529
4-57

H. P. 5 YR.  R. & C. TERM

**1**
**Premiums and when payable**

*The Foregoing Agreement is made in consideration of the*

ANNUAL *premium of* FOUR HUNDRED THREE

*Dollars and* NO *Cents to be paid to the*

*Company on or before the* 12TH *day of* JUNE

*in each and every year during the term of Five years from the date hereof or until the prior death of the insured.*

**2**
**Who may exercise privileges**

*During the lifetime of the insured, the right to exercise all options and privileges described herein, and to agree with the Company to any change in, amendment to, or cancellation of this policy shall vest alone in the life owner (hereinafter so called) designated as follows:* Cass City Manufacturing Co., a corporation, Cass City, Michigan.

**3**
**How beneficiary may be changed**

The beneficiary may be changed as often as desired by filing a written request therefor at the Home Office of the Company accompanied by the policy for endorsement and such change shall take effect as of the date of execution of such request, without prejudice to the Company on account of any payment made by it before receipt of such request, but only if it has been endorsed upon the policy. The interest of the beneficiary shall be subject to any assignment of this policy made by the life owner.

If any beneficiary does not survive the insured, the interest of such beneficiary shall vest in the life owner alone unless otherwise provided herein.

**4**
**How premiums are payable**

**Grace period**

All premiums shall be paid in advance at the Home Office of the Company, or to its authorized agent, in exchange for a receipt signed by its Secretary or Assistant Secretary and countersigned by the agent. If any such premium is not paid when due, this policy shall cease, except that a grace of thirty-one days, during which the policy shall remain in full force, will be allowed for the payment of any premium after the first. If death occurs within the grace period, the premium, if unpaid, will be deducted from the amount payable hereunder.

This policy shall not become effective until the first premium upon it is paid during the good health of the insured, and when so paid this policy shall be deemed effective from the date of issue as shown on the first page hereof.

**5**
**How premiums may be paid annually, semi-annually, or quarterly**

The Company will accept premiums for annual, semi-annual, or quarterly periods at its published rates at the date of issue of this policy, provided that before any change is made due written request shall be made to the Company before the end of the grace period.

**6**
**How term may be renewed**

If this policy is in force at the end of its term it may be renewed without further evidence of insurability for successive terms thereafter as follows: Renewal terms commencing at insuring ages 60 or under shall be for 5 years each; renewal terms commencing at insuring ages 61, 62, 63 or 64 shall be for 4, 3, 2, or 1 year respectively; no further renewal terms shall commence after insuring age 64.

Renewal of this policy shall be effected by and subject to the payment of premiums in the same manner and under the same conditions as in the preceding term; the amount of the premium payable during each renewal term shall be based on the insuring age at the beginning of such term, and shall be determined from the following table.

34529

## TABLE OF PREMIUMS FOR INSURANCE OF $1,000

| INSURING AGE BEGINNING OF RENEWAL TERM | ANNUAL PREMIUM | INSURING AGE BEGINNING OF RENEWAL TERM | ANNUAL PREMIUM | INSURING AGE BEGINNING OF RENEWAL TERM | ANNUAL PREMIUM |
|---|---|---|---|---|---|
| 20 | $5.44 | 35 | $6.81 | 50 | $16.61 |
| 21 | 5.50 | 36 | 7.07 | 51 | 17.91 |
| 22 | 5.55 | 37 | 7.35 | 52 | 19.39 |
| 23 | 5.60 | 38 | 7.69 | 53 | 20.96 |
| 24 | 5.65 | 39 | 8.06 | 54 | 22.66 |
| 25 | 5.69 | 40 | 8.49 | 55 | 24.50 |
| 26 | 5.73 | 41 | 8.96 | 56 | 26.55 |
| 27 | 5.78 | 42 | 9.50 | 57 | 28.76 |
| 28 | 5.84 | 43 | 10.10 | 58 | 31.19 |
| 29 | 5.91 | 44 | 10.78 | 59 | 33.83 |
| 30 | 6.01 | 45 | 11.52 | 60 | 36.71 |
| 31 | 6.10 | 46 | 12.33 | 61 | 38.57 |
| 32 | 6.24 | 47 | 13.26 | 62 | 40.54 |
| 33 | 6.41 | 48 | 14.25 | 63 | 42.61 |
| 34 | 6.59 | 49 | 15.38 | 64 | 44.79 |

Semi-annual, quarterly and monthly premiums will be calculated on the basis of 51 per cent., 26 per cent. and 8¾ per cent., respectively, of the annual premiums shown in the above table.

**7**
**How policy may be exchanged for insurance of another kind**

While this policy is in force and before the anniversary nearest the insured's sixtieth birthday, it may upon application be exchanged, without further evidence of insurability, for a level premium whole life or endowment policy for an amount of insurance not in excess of the amount of this policy.

THE NEW POLICY

(1) Shall bear the date of exchange and shall be issued at the regular premium for the then attained age of the insured, or

(2) Shall, if exchanged within the original term of five years, be dated back to the same date as this policy and be issued at the same age as this policy. In this case payment must be made of (a) the difference between the premiums already paid hereon, for an amount of insurance equalling that of the new policy, and those that would have been required under the new policy, with interest at five per cent. compounded annually, or (b) the cash value under the new policy if it should be greater.

The new policy shall be issued on any plan in use at the time of its date and at the then regular premium rate for the class in which the insured is now placed.

If this policy contains an Additional Indemnity Provision or a Total and Permanent Disability Provision, the new policy will be issued with such similar provision, not more liberal than contained herein, as may be elected from those customarily issued by the Company (at the date the new policy bears) with the plan of insurance taken.

**8**
**How policy may be reinstated**

Within five years after default in any premium payment, if this policy has not been surrendered, it may be reinstated upon evidence of insurability satisfactory to the Company and by payment of arrears of premiums with interest compounded at each anniversary at the rate of five per cent. per annum.

**9**
**How insurance may be made payable in instalments if desired instead of in one sum**

If it is so elected, the whole or any part of the net sum payable under this policy as a death claim will be paid under one of the modes described below instead of in one sum.

Election shall be made by filing written notice thereof with the Company at its Home Office accompanied by the policy for endorsement and shall take effect as of the date of execution of such notice, but only if the election has been endorsed upon the policy.

In case no election has been made during the lifetime of the insured, the beneficiary may so elect after the death of the insured.

If this policy is assigned, or if a corporation, association, partnership, or estate is the payee, whether as trustee or otherwise, or if the amount of each payment will be less than $10 per payee, then these modes of settlement shall be available only with the Company's consent.

If an election has been made requiring payment under one of these modes, the policy shall be surrendered, if required by the Company, when it becomes a claim, and a supplementary contract will then be issued for the mode elected.

**Interest payments**

MODE 1. The payment of interest on the sum payable under this mode annually, semi-annually, quarterly, or monthly at the end of each interest period. The amount of interest payment for each $1,000 of such sum will be as follows:

| | | | |
|---|---|---|---|
| Annual | $20.00 | Quarterly | $4.96 |
| Semi-annual | 9.95 | Monthly | 1.65 |

The time during which interest shall be paid shall not exceed the lifetime of one payee except with the Company's consent.

At the death of the payee, the sum payable under this mode with accrued interest will be paid to the executors or administrators of the payee, unless otherwise provided in the election.

**Instalments of fixed amount**

MODE 2. The payment in advance of equal annual, semi-annual, quarterly, or monthly instalments of any fixed amount specified in the election, provided the amount payable in a year is not less than $50 for each $1,000 of the sum payable under this mode, until the sum payable under this mode, with interest thereon at two per cent. per annum and such excess interest as may be declared annually by the Company, is exhausted. At the death of the payee, the balance of the fund will be paid in one sum to the executors or administrators of the payee, unless otherwise provided in the election.

**Instalments for fixed period**

MODE 3. The payment in advance of equal annual, semi-annual, quarterly, or monthly instalments for a fixed period not exceeding thirty years. The amount of instalment for each $1,000 of the sum payable under this mode is shown in Table B. At the death of the payee, the present value of any unpaid instalments commuted on the basis of two per cent. compound interest per annum will be paid in one sum to the executors or administrators of the payee, unless otherwise provided in the election.

TABLE B

| TERM OF INSTAL- MENT PAY- MENTS | AMOUNT OF INSTALMENT | | | | TERM OF INSTAL- MENT PAY- MENTS | AMOUNT OF INSTALMENT | | | |
|---|---|---|---|---|---|---|---|---|---|
| | ANNUAL | SEMI- ANNUAL | QUAR- TERLY | MONTH- LY | | ANNUAL | SEMI- ANNUAL | QUAR- TERLY | MONTH- LY |
| YEARS | | | | | YEARS | | | | |
| 1 | $1,000.00 | $502.46 | $251.86 | $84.09 | 10 | $109.14 | $54.84 | $27.49 | $9.18 |
| 2 | 504.95 | 253.73 | 127.17 | 42.46 | 15 | 76.30 | 38.34 | 19.22 | 6.42 |
| 3 | 339.95 | 170.82 | 85.62 | 28.59 | 20 | 59.96 | 30.13 | 15.10 | 5.04 |
| 4 | 257.47 | 129.37 | 64.85 | 21.65 | 25 | 50.22 | 25.23 | 12.65 | 4.22 |
| 5 | 208.00 | 104.52 | 52.39 | 17.49 | 30 | 43.77 | 22.00 | 11.03 | 3.68 |

**Instalments for fixed period and life thereafter**

MODE 4. The payment in advance of equal annual, semi-annual, quarterly, or monthly instalments for a fixed period of years and for as long thereafter as the payee lives. The amount of monthly instalment for each $1,000 of the sum payable under this mode is shown in Table C, and depends upon the sex and age of the payee taken as of the nearest birthday at the time the first instalment becomes due. To determine the amount of annual, semi-annual, or quarterly instalments multiply the monthly instalment by 11.7, 5.93 or 2.98 respectively. At the death of the payee, the present value of any unpaid instalments commuted on the basis of two per cent. compound interest per annum will be paid in one sum to the executors or administrators of the payee, unless otherwise provided in the election.

TABLE C

LIFE INCOME

| AGE OF PAYEE | | MONTHLY INSTALMENTS | | | | AGE OF PAYEE | | MONTHLY INSTALMENTS | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MALE | FE- MALE | 60 MONTHS | 120 MONTHS | 180 MONTHS | 240 MONTHS | MALE | FE- MALE | 60 MONTHS | 120 MONTHS | 180 MONTHS | 240 MONTHS |
| 6 and under | 11 and under | $2.35 | $2.34 | $2.33 | $2.32 | 44 | 49 | $3.78 | $3.74 | $3.67 | $3.58 |
| 7 | 12 | 2.36 | 2.35 | 2.34 | 2.33 | 45 | 50 | 3.86 | 3.81 | 3.74 | 3.63 |
| 8 | 13 | 2.38 | 2.37 | 2.36 | 2.35 | 46 | 51 | 3.94 | 3.89 | 3.81 | 3.69 |
| 9 | 14 | 2.40 | 2.39 | 2.38 | 2.37 | 47 | 52 | 4.02 | 3.97 | 3.88 | 3.74 |
| 10 | 15 | 2.42 | 2.41 | 2.40 | 2.39 | 48 | 53 | 4.11 | 4.05 | 3.95 | 3.80 |
| 11 | 16 | 2.44 | 2.43 | 2.42 | 2.41 | 49 | 54 | 4.21 | 4.14 | 4.02 | 3.86 |
| 12 | 17 | 2.46 | 2.45 | 2.44 | 2.43 | 50 | 55 | 4.30 | 4.23 | 4.10 | 3.92 |
| 13 | 18 | 2.48 | 2.47 | 2.46 | 2.45 | 51 | 56 | 4.41 | 4.32 | 4.18 | 3.98 |
| 14 | 19 | 2.50 | 2.49 | 2.48 | 2.47 | 52 | 57 | 4.51 | 4.42 | 4.26 | 4.04 |
| 15 | 20 | 2.52 | 2.51 | 2.50 | 2.49 | 53 | 58 | 4.63 | 4.52 | 4.34 | 4.10 |
| 16 | 21 | 2.54 | 2.53 | 2.52 | 2.51 | 54 | 59 | 4.75 | 4.62 | 4.42 | 4.16 |
| 17 | 22 | 2.57 | 2.56 | 2.55 | 2.54 | 55 | 60 | 4.87 | 4.73 | 4.51 | 4.22 |
| 18 | 23 | 2.59 | 2.58 | 2.57 | 2.56 | 56 | 61 | 5.00 | 4.85 | 4.68 | 4.28 |
| 19 | 24 | 2.62 | 2.61 | 2.60 | 2.59 | 57 | 62 | 5.14 | 4.96 | 4.68 | 4.34 |
| 20 | 25 | 2.65 | 2.64 | 2.63 | 2.62 | 58 | 63 | 5.28 | 5.08 | 4.77 | 4.39 |
| 21 | 26 | 2.67 | 2.66 | 2.65 | 2.64 | 59 | 64 | 5.43 | 5.21 | 4.86 | 4.45 |
| 22 | 27 | 2.70 | 2.69 | 2.68 | 2.67 | 60 | 65 | 5.59 | 5.34 | 4.96 | 4.50 |
| 23 | 28 | 2.73 | 2.72 | 2.71 | 2.70 | 61 | 66 | 5.76 | 5.47 | 5.05 | 4.56 |
| 24 | 29 | 2.76 | 2.75 | 2.74 | 2.73 | 62 | 67 | 5.93 | 5.61 | 5.14 | 4.61 |
| 25 | 30 | 2.79 | 2.78 | 2.77 | 2.76 | 63 | 68 | 6.12 | 5.75 | 5.23 | 4.65 |
| 26 | 31 | 2.83 | 2.82 | 2.81 | 2.79 | 64 | 69 | 6.31 | 5.89 | 5.32 | 4.70 |
| 27 | 32 | 2.86 | 2.85 | 2.84 | 2.83 | 65 | 70 | 6.51 | 6.04 | 5.41 | 4.74 |
| 28 | 33 | 2.90 | 2.89 | 2.88 | 2.86 | 66 | 71 | 6.72 | 6.19 | 5.49 | 4.78 |
| 29 | 34 | 2.94 | 2.93 | 2.92 | 2.90 | 67 | 72 | 6.94 | 6.35 | 5.58 | 4.82 |
| 30 | 35 | 2.98 | 2.97 | 2.96 | 2.93 | 68 | 73 | 7.18 | 6.50 | 5.66 | 4.85 |
| 31 | 36 | 3.02 | 3.01 | 3.00 | 2.97 | 69 | 74 | 7.42 | 6.66 | 5.74 | 4.88 |
| 32 | 37 | 3.07 | 3.06 | 3.01 | 3.01 | 70 | 75 | 7.67 | 6.82 | 5.81 | 4.91 |
| 33 | 38 | 3.11 | 3.10 | 3.08 | 3.05 | 71 | 76 | 7.94 | 6.98 | 5.88 | 4.93 |
| 34 | 39 | 3.16 | 3.15 | 3.13 | 3.09 | 72 | 77 | 8.22 | 7.14 | 5.95 | 4.95 |
| 35 | 40 | 3.21 | 3.20 | 3.17 | 3.13 | 73 | 78 | 8.51 | 7.29 | 6.01 | 4.97 |
| 36 | 41 | 3.26 | 3.25 | 3.22 | 3.18 | 74 | 79 | 8.81 | 7.45 | 6.07 | 4.98 |
| 37 | 42 | 3.32 | 3.30 | 3.27 | 3.22 | 75 | 80 | 9.12 | 7.60 | 6.13 | 5.00 |
| 38 | 43 | 3.38 | 3.36 | 3.32 | 3.27 | 76 | 81 | 9.44 | 7.75 | 6.16 | 5.01 |
| 39 | 44 | 3.44 | 3.41 | 3.36 | 3.32 | 77 | 82 | 9.78 | 7.89 | 6.21 | 5.02 |
| 40 | 45 | 3.50 | 3.47 | 3.43 | 3.37 | 78 | 83 | 10.12 | 8.03 | 6.24 | 5.02 |
| 41 | 46 | 3.56 | 3.54 | 3.49 | 3.42 | 79 | 84 | 10.48 | 8.16 | 6.28 | 5.03 |
| 42 | 47 | 3.63 | 3.60 | 3.55 | 3.47 | 80 and over | 85 and over | 10.84 | 8.28 | 6.30 | 5.03 |
| 43 | 48 | 3.70 | 3.67 | 3.61 | 3.52 | | | | | | |

Page 4

34529

**Excess interest**

In addition to any interest payments or to any payments for a fixed period of years under these modes of settlement, payments of such excess interest as may be declared annually by the Company will be made.

**Right of withdrawal**

If it is specifically provided in the election, the payee may at any time withdraw under Mode 1 a part or all of the sum payable, under Mode 2 the balance of the fund, or under Mode 3 the present value of the unpaid instalments commuted on the basis of two per cent. compound interest per annum.

The Company may defer the payment of any such withdrawal value for a period not exceeding six months from the date of receipt of written request therefor.

All sums payable by the Company under this policy shall be payable at its Home Office. The sum insured will be payable under the terms hereof only upon legal surrender of this policy.

**10**
**Statements in application are representations and not warranties**

All statements made by the insured shall be deemed representations and not warranties, and no statement shall avoid the policy or be used in defense to a claim under it unless it is contained in the written application herefor and unless a copy of such application is attached hereto when issued.

**11**
**Incontestability**

This policy and the application herefor, a copy of which application is attached hereto and made a part hereof, constitute the entire contract between the parties hereto, and it shall be incontestable after it has been in force during the lifetime of the insured for a period of two years from its date of issue except for non-payment of premium.

The incontestability clause shall not apply to any Total and Permanent Disability Provision or any provision for an additional benefit in case of death from accidental means which may be attached hereto.

**12**
**Rule governing if age has been misstated**

If the age of the insured has been misstated any amount payable hereunder shall be such an amount as the premium paid would have purchased at the Company's published rate in use for the correct age at the date of issue of this policy. Age will be admitted on proof satisfactory to the Company.

**13**
**Amount payable in event of suicide**

If the insured shall commit suicide within two years from the date of issue hereof, while sane or insane, the Company will be liable only for an amount equal to the premiums paid in cash hereunder.

**14**
**Policy non-participating**

This policy shall not be entitled to share in the surplus earnings of the Company.

**15**
**Assignments**

No assignment of this policy shall be binding upon the Company unless and until the original or a duplicate thereof is filed at its Home Office. The Company does not assume any responsibility for the validity of an assignment. No assignment of this policy or any interest thereunder made after the death of the insured shall be valid unless the Company consents thereto.

**16**
**Reserve basis**

The reserve for which funds are to be held upon this policy shall be computed on the basis of the Commissioners 1941 Standard Ordinary Mortality Table and two and three-quarters per cent. interest by the full net level premium method.

**17**
**All agreements must be signed by an executive officer**

All agreements made by the Company are signed by its President, Vice-President, Secretary, Assistant Secretary, Treasurer or Assistant Treasurer. No other person can alter or waive any of the conditions of this policy, extend the time for paying a premium or make any agreement which shall be binding upon the Company.