COMMISSIONER OF INTERNAL REVENUE *v.*
ESTATE OF NOEL ET AL.

No. 503.  Argued April 1, 1965.—
Decided April 29, 1965.

*John B. Jones, Jr.,* argued the cause for petitioner.
With him on the brief were *Solicitor General Cox* and
*Assistant Attorney General Oberdorfer.*

*Harry Norman Ball* argued the cause for respondents.
With him on the brief was *Edward F. Merrey, Jr.*

MR. JUSTICE BLACK delivered the opinion of the Court.

This is a federal estate tax case, raising questions under § 2042 (2) of the Internal Revenue Code of 1954, 26 U. S. C. § 2042 (2) (1958 ed.), which requires inclusion in the gross estate of a decedent of amounts received by beneficiaries other than the executor from "insurance under policies on the life of the decedent" if the decedent "possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. . . ."[1] The questions presented in this case are whether certain flight insurance policies payable upon the accidental death of the insured were policies "on the life of the decedent" and whether at his death he had reserved any of the "incidents of ownership" in the policies.

These issues emerge from the following facts. Respondent Ruth M. Noel drove her husband from their home to New York International Airport where he was to take an airplane to Venezuela. Just before taking off, Mr. Noel signed applications for two round-trip flight insurance policies, aggregating $125,000 and naming his wife as beneficiary. Mrs. Noel testified that she paid the premiums of $2.50 each on the policies and that her husband then instructed the sales clerk to "give them to my

---

[1] "§ 2042. Proceeds of life insurance.

"The value of the gross estate shall include the value of all property—

"(1) Receivable by the executor.

"To the extent of the amount receivable by the executor as insurance under policies on the life of the decedent.

"(2) Receivable by other beneficiaries.

"To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. . . ."

wife. They are hers now, I no longer have anything to do with them." The clerk gave her the policies, which she kept. Less than three hours later Mr. Noel's plane crashed into the Atlantic Ocean and he and all others aboard were killed. Thereafter the companies paid Mrs. Noel the $125,000 face value of the policies, which was not included in the estate tax return filed by his executors. The Commissioner of Internal Revenue determined that the proceeds of the policies should have been included and the Tax Court sustained that determination, holding that the flight accident policies were insurance "on the life of the decedent"; that Mr. Noel had possessed exercisable "incidents of ownership" in the policies at his death; and that the $125,000 paid to Mrs. Noel as beneficiary was therefore includable in the gross estate. 39 T. C. 466. Although agreeing that decedent's reserved right to assign the policies and to change the beneficiary amounted to "exercisable incidents of ownership within the meaning of the statute," the Court of Appeals nevertheless reversed, holding that given "its ordinary, plain and generally accepted meaning," the statutory phrase "policies on the life of the decedent" does not apply to insurance paid on account of accidental death under policies like those here. 332 F. 2d 950. The court's reason for drawing the distinction was that under a life insurance contract an insurer "agrees to pay a specified sum upon the occurrence of an *inevitable* event," whereas accident insurance covers a risk "which is *evitable* and not likely to occur." (Emphasis supplied.) 332 F. 2d, at 952. Because of the importance of an authoritative answer to these questions in the administration of the estate tax laws, we granted certiorari to decide them. 379 U. S. 927.

## I.

In 1929, 36 years ago, the Board of Tax Appeals, predecessor to the Tax Court, held in *Ackerman* v. *Commis-*

*sioner,* 15 B. T. A. 635, that "amounts received as accident insurance" because of the death of the insured were includable in the estate of the deceased.[2] The Board of Tax Appeals recognized that "there is a distinction between life insurance and accident insurance, the former insuring against death in any event and the latter . . . against death under certain contingencies . . . ." The Court of Appeals in the case now before us considered this distinction between an "inevitable" and an "evitable" event to be of crucial significance under the statute. The Board of Tax Appeals in *Ackerman* did not, stating "we fail to see why one is not taken out upon the life of the policy-holder as much as the other. In each case the risk assumed by the insurer is the loss of the insured's life, and the payment of the insurance money is contingent upon the loss of life." This view of the Board of Tax Appeals is wholly consistent with the language of the statute itself which makes no distinction between "policies on the life of the decedent" which are payable in all events and those payable only if death comes in a certain way or within a certain time. Even were the statutory language less clear, since the Board of Tax Appeals' *Ackerman* case it has been the settled and consistent administrative practice to include insurance proceeds for accidental death under policies like these in the estates of decedents. The Treasury Regulations remain unchanged from the time of the *Ackerman* decision [3] and from that day to this Con-

---

[2] Section 302 (g) of the Revenue Act of 1924, which was applicable in *Ackerman,* provided that the estate should include all proceeds receivable by other beneficiaries "under policies taken out by the decedent upon his own life." 43 Stat. 253, 304–305.

[3] 26 CFR § 20.2042–1 (a)(1). See also Treas. Reg. 105 (1939 Code), § 81.25; Treas. Reg. 80 (1934 ed.), Art. 25; Treas. Reg. 70 (1926 ed. and 1929 ed.), Art. 25; Treas. Reg. 68 (1924 ed.), Art. 25; Treas. Reg. 63 (1922 ed.), Art. 27; and Treas. Reg. 37 (1921 ed.), Art. 32.

gress has never attempted to limit the scope of that decision or the established administrative construction of § 2042 (2), although it has re-enacted that section and amended it in other respects a number of times.[4] We have held in many cases that such a long-standing administrative interpretation, applying to a substantially re-enacted statute, is deemed to have received congressional approval and has the effect of law. See, *e. g., National Lead Co.* v. *United States,* 252 U. S. 140, 146; *United States* v. *Dakota-Montana Oil Co.,* 288 U. S. 459, 466. We hold here that these insurance policies, whether called "flight accident insurance" or "life insurance," were in effect insurance taken out on the "life of the decedent" within the meaning of § 2042 (2).

## II.

The executors' second contention is that even if these were policies "on the life of the decedent," Mrs. Noel owned them completely, and the decedent therefore possessed no exercisable incident of ownership in them at the time of his death so as to make the proceeds includable in his estate. While not clearly spelled out, the contention that the decedent reserved no incident of ownership in the policies rests on three alternative claims: (a) that Mrs. Noel purchased the policies and therefore owned them; (b) that even if her husband owned the policies, he gave them to her, thereby depriving himself of power to assign the policies or to change the beneficiary; and (c) even assuming he had contractual power to assign the policies or make a beneficiary change, this power was

---

[4] Section 2042 was first enacted as § 402 (f) of the Revenue Act of 1918, c. 18, 40 Stat. 1057, 1097–1098. This section was re-enacted in § 402 (f) of the Revenue Act of 1921, c. 136, 42 Stat. 227, 278–279; in § 302 (g) of the Revenue Act of 1924, c. 234, 43 Stat. 253, 304–305, and the Revenue Act of 1926, c. 27, 44 Stat. 9, 70–71; and in § 811 (g) of the Internal Revenue Code of 1939.

illusory as he could not possibly have exercised it in the interval between take-off and the fatal crash in the Atlantic.

(a) The contention that Mrs. Noel bought the policies and therefore owned them rests solely on her testimony that she furnished the money for their purchase, intending thereby to preserve her right to continue as beneficiary. Accepting her claim that she supplied the money to buy the policies for her own benefit (which the Tax Court did not decide), what she bought nonetheless were policy contracts containing agreements between her husband and the companies. The contracts themselves granted to Mr. Noel the right either to assign the policies or to change the beneficiary without her consent. Therefore the contracts she bought by their very terms rebut her claim that she became the complete, unconditional owner of the policies with an irrevocable right to remain the beneficiary.

(b) The contention that Mr. Noel gave or assigned the policies to her and therefore was without power thereafter to assign them or to change the beneficiary stands no better under these facts. The contract terms provided that these policies could not be assigned nor could the beneficiary be changed without a written endorsement on the policies. No such assignment or change of beneficiary was endorsed on these policies, and consequently the power to assign the policies or change the beneficiary remained in the decedent at the time of his death.

(c) Obviously, there was no practical opportunity for the decedent to assign the policies or change the beneficiary between the time he boarded the plane and the time he died. That time was too short and his wife had the policies in her possession at home. These circumstances disabled him for the moment from exercising those "incidents of ownership" over the policies which were undoubtedly his. Death intervened before this temporary disa-

bility was removed. But the same could be said about a man owning an ordinary life insurance policy who boarded the plane at the same time or for that matter about any man's exercise of ownership over his property while aboard an airplane in the three hours before a fatal crash. It would stretch the imagination to think that Congress intended to measure estate tax liability by an individual's fluctuating, day-by-day, hour-by-hour capacity to dispose of property which he owns. We hold that estate tax liability for policies "with respect to which the decedent possessed at his death any of the incidents of ownership" depends on a general, legal power to exercise ownership, without regard to the owner's ability to exercise it at a particular moment. Nothing we have said is to be taken as meaning that a policyholder is without power to divest himself of all incidents of ownership over his insurance policies by a proper gift or assignment, so as to bar its inclusion in his gross estate under § 2042 (2). What we do hold is that no such transfer was made of the policies here involved. The judgment of the Court of Appeals is reversed and the judgment of the Tax Court is affirmed.

*It is so ordered.*

MR. JUSTICE DOUGLAS dissents.