Sarah A. WILSON, now known as S. A. W. Hooker and George C. Wilson, Executors of the Estate of George C. Wilson, Jr., Deceased

v.

UNITED STATES of America.

Civ. A. No. 32978.

United States District Court
E. D. Pennsylvania.

April 4, 1966.

---

Alphonsus R. Romeika, Romeika, Hedner, Fish & Scheckter, Philadelphia, Pa., for plaintiff.

Drew J. T. O'Keefe, U. S. Atty., Merna B. Marshall, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

SUR PLEADINGS AND PROOF

KIRKPATRICK, District Judge.

This is a civil action for refund of estate taxes paid by the plaintiffs, executors of the estate of George C. Wilson, Jr., who died October 26, 1951. The parties have submitted the case to the court upon the pleadings and a stipulation covering all relevant facts, together with another stipulation specifying "the legal issues for determination by the court."

The estate tax return, filed January 21, 1953, reported a total gross estate of $262,793.23 and deductions of $207,-799.03. When the specific exemptions were deducted, the net taxable estate became zero and it was so reported. Upon audit of the tax return, the Internal Revenue Service determined a tax deficiency of $22,279.48.

The decedent at the time of his death was the life beneficiary of a spendthrift trust created by his father which gave him a power of appointment of the corpus exercisable by will. By his will, he exercised the power in favor of his wife and children.

The first issue presented by the stipulations above referred to is whether the decedent's power of appointment is a "general power of appointment" within the provisions of Section 811(f) (1) of the Internal Revenue Code of 1939, as amended. If so, the trust assets were properly included in the decedent's gross estate.

A number of decisions of the Pennsylvania courts have been cited by the parties, but in Morgan v. Commissioner, 309 U.S. 78, 80–81, 60 S.Ct. 424, 426, 84 L.Ed. 585, Justice Roberts, speaking for the court, said,

"State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed. Our duty is to ascertain the meaning of the words used to specify the thing taxed. If it is found in a given case that an interest or right created by local law was the object intended to be taxed, the federal law must prevail no matter what name is given to the interest or right by state law."

The instrument creating the trust contains two paragraphs which bear upon the question. Paragraph TWELFTH provides that, after the death of the decedent, the trustee shall pay the principal to "any person or persons as the said GEORGE C. WILSON, JR. shall, in his Last Will and Testament, direct." The plaintiffs concede that, standing by itself, the paragraph creates a general power and that, unless it is restricted by the NINTH paragraph, the assets passing under it are includable in the decedent's gross estate for tax purposes.

The NINTH paragraph is as follows:

NINTH: Neither the principal nor the income of this trust fund shall be liable for the debts of any beneficiary nor shall the same be subject to seizure by any creditor of any beneficiary under any writ or proceeding at law or in equity, and no beneficiary hereunder

shall have any power to sell, assign or transfer, encumber or in any other manner to anticipate or dispose of his or her interest in the trust fund or in the income produced thereby.

In substance, the plaintiffs contend that this spendthrift trust provision narrows the power created by the TWELFTH paragraph by eliminating creditors from the class of persons in whose favor the decedent could have exercised the power. If this is so, the power would not be general. I am unable to accept this view.

■ It seems quite clear to me that the provision in question does not operate to restrict the decedent's power to appoint to "any person or persons"—an expression which, of course, includes creditors—conferred upon him by the TWELFTH paragraph. What it does is to prevent the creditors of the decedent from subjecting the property by legal process to the payment of their claims. It has no effect whatever upon a power exercisable only by the decedent's will and effective only upon his death.

■ The next issue is, Are the assets of the trust estate subject to the claims against the general estate within the meaning of Section 812(b) of the 1939 Internal Revenue Code? The words "subject to the claims" are the words of the stipulation. Under Pennsylvania law the decedent's exercise of his power, with nothing more, would not have accomplished a blending of the trust assets with his estate, thus permitting creditors to reach the trust assets. In re Stannert's Estate, 339 Pa. 439, 15 A.2d 360. However, this is not dispositive of the issue. The issue, as I understand it, is whether or not the claims of creditors can be used as a deduction from the gross estate augmented by the assets of the trust.

■ The taxing statutes value the estate without regard to the amount of money actually in the hands of the executors available to pay debts and that figure may be disregarded. Congress did not say "claims in the amount collectible" or "value of claims." As in bankruptcy, a claim against a bankrupt estate is the valid amount of the indebtedness, so the fact that there may be insufficient assets to pay off all the claims against this decedent's estate does not prevent them from being "claims" deductible from the gross estate in their full amount.

■■ The next issue, as stipulated, is whether the estate may diminish the gross estate by including the decedent's interest in three partnerships at a minus figure. By reason of excess withdrawals by the decedent, he owed the partnerships $122,142.49 at the time of his death. The plaintiffs' contention is that this minus value can be deducted from the gross estate. The Government set the value of the decedent's interest in the partnerships at zero but allowed the excess withdrawals to be counted as a claim. This was clearly correct. The valuation of an estate is the fair market value of the assets. Assets can never have a minus value.

The next issue is whether the Commissioner was correct in reducing the marital deduction by the amount of a $70,000 mortgage on jointly owned property held by the decedent and his wife.

■ Section 812(e) (1) (E) specifically provides that in determining any interest of a surviving spouse for the purpose of marital deduction "where such interest or property is incumbered in any manner, * * * such incumbrance or obligation shall be taken into account in the same manner as if the amount of a gift to such spouse of such interest were being determined." In spite of this plain provision, the plaintiffs argue that, since the property in question was owned jointly by the decedent and his wife, his estate was chargeable for one-half the balance of the mortgage. Their only warrant for such argument is a decision of the Supreme Court of Pennsylvania in Kershaw Estate, 352 Pa. 205, 42 A.2d 538. That case, however, was not under the federal estate tax statute but under the Pennsylvania inheritance tax law and has no application. Had it been shown in the present case that the estate had paid the one-half of the mortgage which under

Pennsylvania law it may have been obligated to pay, then I could agree that the widow received a property which had a value which was worth $35,000 more than she did receive with the estate not paying its share of the $70,000 mortgage.

The remaining issues are whether certain insurance policies on the life of the decedent are includable in the gross estate, whether they can be included in the marital deduction in their full amount and, if not in their full amount, whether the proceeds received by the widow for the first six months can be included in such deduction.

 Under the provisions of Section 811(g) (2) of the 1939 Code, as amended, the value of the gross estate is to be determined by including, among other things, the amount receivable by beneficiaries other than the decedent's estate, upon life insurance policies if the policies were purchased with premiums paid directly or indirectly by the decedent or if the decedent at his death possessed "any of the incidents of ownership" of the policies.[1] Thus, if the decedent possessed *any* of the incidents of ownership, it is wholly immaterial who paid the premiums on the insurance. Commissioner v. Noel's Estate, 380 U.S. 678, 85 S.Ct. 1238, 14 L.Ed.2d 159. In the present case the decedent possessed all of the incidents of ownership in the policies exercisable by himself alone or in conjunction with his wife in certain cases. The plaintiffs rely upon the decision of the Circuit Court of Appeals in Helvering v. Reybine, 2 Cir., 83 F.2d 215, but the statute in effect at the time of that decision was amended, prior to the decedent's death, to include the incidents of ownership test along with the payment of premiums test and, hence, the decision does not support the plaintiffs' position.

The next question presented is whether or not the amount of the insurance policies may be included in the marital deduction, in whole or in part. Section 812(e) (1) (B) provides that an interest passing to a spouse which will terminate upon her death shall not be included in the marital deduction. This is such an interest. If the decedent's wife dies before the 240 monthly payments are made, the remainder will go to the children. It is, therefore, not includable in the marital deduction. Nor is any part of it within any of the exceptions for such terminable interests contained in the Act.

An appropriate form of judgment may be submitted.

---

1. Treasury Regulations 105, Section 81.27, defines "incidents of ownership" as, "Legal incidents of ownership in the policy include, for example, the right of the insured or his estate to its economic benefits, the power to change the beneficiary, to surrender or cancel the policy, to assign it, to revoke an assignment, to pledge it for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc."