312 F.Supp. 108 (1970)
MERCANTILE TRUST COMPANY NATIONAL ASSOCIATION, a corporation, Executor of the Estate of Charles W. Ahner, Deceased, Plaintiff,
v.
UNITED STATES of America, Defendant.
No. 69 C 61(2).
United States District Court, E. D. Missouri, E. D.
April 8, 1970.
Michael J. Aubuchon and Jesse E. Bishop, St. Louis, Mo., for plaintiff.
Daniel Bartlett, Jr., U. S. Atty., St. Louis, Mo., Michael C. Durney, Trial Atty., Tax Division, Dept. of Justice, Washington, D. C., for defendant.

MEMORANDUM
MEREDITH, District Judge.
This case was tried to the Court. The Court has been duly advised by depositions, stipulation, and briefs of the parties.
Plaintiff is a national bank, doing business in the City of St. Louis, Missouri, and is the executor of the estate of Charles W. Ahner, a resident of St. Louis County, Missouri, who died on June 17, 1965.
*109 On September 14, 1966, the plaintiff filed the Federal Estate Tax Return of the estate of Charles W. Ahner. On May 24, 1968, the Commissioner of Internal Revenue assessed a deficiency against said estate in the amount of $30,501.41, plus interest in the amount of $3,085.24, which amounts were paid by the estate. A claim for refund was filed and was formally rejected on January 27, 1969. The instant suit was timely filed on February 19, 1969. This Court has jurisdiction by virtue of 28 U.S.C. § 1346(a) (1).
Initially, the parties disagreed about the valuation of certain stock which was included in the deficiency assessment. Prior to trial this matter has been resolved by the parties and they will calculate the effect of their agreement among themselves when judgment is entered.
The question presented to this Court is whether or not all or any part of the proceeds of five insurance policies on decedent's life are includable in the gross estate of decedent as transfers in contemplation of death under the provisions of 26 U.S.C. § 2035.
The deceased was a lawyer, specializing in labor law. He and his wife Lorraine A. Ahner were married in 1942; a child was born in 1950 and one in 1956. Deceased had an income of approximately forty to fifty thousand dollars per year from his practice of law. His practice was such that he was constantly out of town and constantly travelling on airplanes. He died unexpectedly of cerebral hemorrhage on June 17, 1965.
Mrs. Ahner had no independent funds of her own and was not employed. For a number of years, the deceased prior to his death, gave Mrs. Ahner from $2,000.00 to $2,500.00 per month from which she paid all of the household bills, including car payments, mortgage payments, and the premiums on the policies of life insurance in question. Mrs. Ahner, because she had no independent funds of her own, was worried how she and the two children would maintain a reasonable standard of living if Mr. Ahner should die suddenly or be killed in an airplane crash. She had expressed this worry to the decedent and had urged him to remedy the situation. As a result of this strong urging by his wife, the deceased consulted an old friend, Harry Greensfelder, who was in the business of selling life insurance through an insurance corporation, Financial Planning Company. The policies in question were purchased through this insurance company. Greensfelder advised the deceased of the tax consequences of taking out insurance policies which were owned by his wife, as opposed to the ownership being vested in the deceased with his wife being named as beneficiary. This was a routine matter for Financial Planning Company to urge prospective purchasers of life insurance to have the ownership in the wife's name as long as there was no problem about the possibility of divorce or other separation.

 Premiums Cash paid
 Beneficiary Within 3 on Premiums
 and Date of Annual Years of Within 3
 Name of Company No. of Policy Date Face Amt. Amt. Pd. Owner Ownership Premium Death Years 
1. Northwestern GW XXXX-XXXX 10-2-59 $10,000.00 $10,000.00 Lorraine A. 6-20-63 $ 88.20 $ 176.40 $ 164.14
 National Ahner
2. Massachusetts 3 372 167 10-19-62 53,381.00 50,806.89 " 10-19-62 1,787.55 5,362.65 1,410.29
 Mutual
3. Phoenix Mutual 1433584 3-25-63 50,000.00 50,137.13 " 3-25-63 1,781.00 5,343.00 1,715.14
4. Phoenix Mutual 1503239 5-21-63 75,000.00 76,807.43 " 5-21-63 2,567.75 7,703.25 1,760.61
5. Northwestern GW 3306A2149 7-1-63 10,000.00 10,000.00 " 7-1-63 88.20 176.40 166.65
 National ___________ ___________ _________ __________ _________
[A1709] $198,381.00 $197,751.45 $6,312.70 $18,761.70 $5,216.83

The first policy in question was a $10,000.00 term life insurance policy issued by Northwestern National Insurance Company. The deceased purchased this policy as a result of solicitation through a plan sponsored by the Missouri Bar Association. This policy was obtained by decedent on October 1, 1959, *110 and transferred to his wife on June 20, 1963. At the time of its transfer, it had no cash surrender value. Neither the first nor the fifth policy, both of which were taken through the Missouri Bar plan and both of which were term policies, required a physical examination. The second, third and fourth policies did require physical examinations. All the policies, with the exception of the first Bar policy for $10,000.00, were owned by Lorraine A. Ahner from the dates of their issuance. She was the named beneficiary. The deceased had no incidents of ownership in any of the other four policies from the dates of their issuance and none in the first Missouri Bar policy for $10,000.00 after it was transferred to his wife on June 20, 1963. The premiums on the remaining four policies were paid partially by borrowing on the cash surrender value by Mrs. Ahner and the balance out of her household account, which was given to her by the deceased.
Under the 1939 Internal Revenue Code, proceeds of life insurance were includable in the gross estate of a decedent if (a) the proceeds were payable to the personal representative, (b) the insured at the time of his death possessed any incidents of ownership in the policy, (c) the insured paid the premiums on the policy. Congress eliminated in the 1954 Internal Revenue Code the payment of premium test as a ground for an inclusion of the proceeds of an insurance policy, 26 U.S.C. § 2042. Under the 1954 Internal Revenue Code, 26 U.S.C. § 2035, any property transferred within three years prior to death raises a presumption that it was in contemplation of death and shall be included in the decedent's estate.
In the instant case, the decedent never owned or had any incidents of ownership of any of the last four policies issued on his life. There was never any transfer of these four policies from the decedent to his wife and he possessed no incidents of ownership at any time during the three years preceding his death. There is no way the proceeds of these last four policies could be included in the estate of decedent under 26 U.S.C. § 2035 and decisions of the courts, for the reason there was no transfer.
The Supreme Court has made it quite clear in the case of Commissioner of Internal Revenue v. Noel's Estate, 380 U.S. 678, 85 S.Ct. 1238, 14 L.E.2d 159 (1965), that the question of inclusion depends on whether or not the decedent had any incidents of ownership in the policy. It is further made clear that a policyholder may divest himself of the incidents of ownership by a proper gift or assignment in the following language, at page 684, 85 S.Ct. at page 1241:
"We hold that estate tax liability for policies `with respect to which the decedent possessed at his death any of the incidents of ownership' depends on a general, legal power to exercise ownership, without regard to the owner's ability to exercise it at a particular moment. Nothing we have said is to be taken as meaning that a policy holder is without power to divest himself of all incidents of ownership over his insurance policies by a proper gift or assignment, so as to bar its inclusion in his gross estate under § 2042(2)."
The Government cites in affirmance of its position Chase National Bank of City of New York v. United States, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405 (1929). This, of course, was decided prior to the 1954 Internal Revenue Code. Additionally, in that case, the decedent retained incidents of ownership until the time of his death.
United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 867 (1931), is still the landmark case in determining what constitutes the test for transfers in contemplation of death. In determining the motives each case must be carefully scrutinized. The Court said at page 118, 51 S.Ct. at page 452:
"If it is the thought of death, as a controlling motive prompting the disposition of property, that affords the test, it follows that the statute does *111 not embrace gifts inter vivos which spring from a different motive."
On the other hand, the Court stated that if the gift is made by the donor "to accomplish some purpose desirable to him if he continues to live", it is not made in contemplation of death.
The Supreme Court further said in Milliken v. United States, 283 U.S. 15, 51 S.Ct. 324, 75 L.Ed. 809 (1931), at page 23, 51 S.Ct. at page 327:
"A transfer, however, is made in contemplation of death wherever the person making it is influenced to do so by such an expectation of death, arising from bodily or mental conditions, as prompts persons to dispose of their property to those whom they deem proper objects of their bounty."
See also First Trust & Deposit Co. v. Shaughnessy, 134 F.2d 940 (2d Cir., 1943), in which the sole purpose of changing the provisions of a trust within two years prior to death was to save estate taxes and no evidence to the contrary was introduced. See also Vanderlip v. Commissioner of Internal Revenue, 155 F.2d 152 (2d Cir. 1946), and Liebmann v. Hassett, 148 F.2d 247 (1st Cir., 1945).
Prichard v. United States, 397 F.2d 60 (5th Cir. 1968), made it quite clear that a husband may unconditionally make his wife the owner and beneficiary of a life insurance policy when it is issued, or later, if he desires, so as to bar inclusion of the policy in his estate. The same is true of Landorf v. United States, 408 F.2d 461 (Ct.Cl.1969).
In recent cases, the courts have generally held that where the deceased had no incidents of ownership at the time of his death, the proceeds of the policy should not be included, even though the policy was transferred within three years prior to his death. They have directed their attention only to the question of whether or not the amounts of premiums paid by the deceased or the cash surrender value of the policy transferred within three years prior to death should be included in the deceased's estate. See Nance v. United States, U.S.D.C.Ariz. 1968, 68-1 USTC 87,403; Gorman v. United States, 288 F.Supp. 225 (E.D. Mich.1968); Est. of William C. Chapin, U.S.Tax Ct., Jan. 12, 1970, 29 TCM 11; Est. of Inez G. Coleman, U.S.Tax Ct., Sept. 9, 1969, 52 TCM 921.
To the contrary, see First National Bank of Midland v. United States, U.S. D.C.Texas, 1968, 69-1 USTC 84,829. In that case, however, Texas was a community property state and since deceased had not renounced his interest in the policy, under Texas law, he still owned a one-half interest in the policy.
In essence, this Court is of the opinion that the only possible amounts includable in deceased's estate in this case would be the total amount of premiums paid in cash out of the household account of Lorraine A. Ahner, in the amount of $5,216.83. The first Missouri Bar policy had no cash surrender value when transferred, accordingly, the transfer had no cash value. While the total premiums payable on the policies during the three years prior to decedent's death amount to $18,761.70, the difference ($13,544.87) between the total premiums ($18,761.70) and the actual cash paid ($5,216.83) by Lorraine A. Ahner was obtained by borrowing on the policies which she owned and cannot be attributed to the deceased.
With regard to the $5,216.83 actually paid by Mrs. Ahner, it is the opinion of the Court that while this money was initially furnished by the deceased, the gifts of these premiums were not made in contemplation of death. It is further the opinion of the Court that the reason for the deceased taking out the final four policies and transferring the one policy, and for permitting his wife to pay the premiums out of her household account was to relieve Mrs. Ahner from the worry of maintenance of the family should Mr. Ahner die suddenly and to end her urging him to remedy the situation. This would preserve the domestic tranquility of the household, an object desirable to Mr. Ahner during his lifetime.
*112 In view of the conclusions reached by this Court, it will not be necessary for the Court to discuss the plaintiff's additional contention that the deceased was obligated to furnish to his wife sufficient funds for the payment of life insurance for the protection of his minor children and wife and that such funds constituted a necessity for which he was legally bound under Missouri law to provide for his wife and family. Sauter & Adams v. Scrutchfield, 28 Mo.App. 150 (K.C.App.1887), and Pfenninger v. Brevard, Mo.App., 129 S.W.2d 924 (St.L. C.A.1939).
Accordingly, judgment will be entered for the plaintiff with interest thereon from the date of payment at the rate of six percent per annum. The parties are directed to submit an agreed judgment to the Court within twenty days from date.
Dated this 8th day of April, 1970.