ESTATE of Robert B. MARGRAVE, Deceased; the United States National Bank, Executor and Trustee of the Robert B. Margrave Revocable Trust, Appellee,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellant.

No. 79–1267.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 5, 1979.

Decided March 31, 1980.

Before GIBSON, Chief Judge,* and STE-PHENSON and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

This is an appeal from a decision of the United States Tax Court involving the difficult question whether the proceeds of an insurance policy on the life of the decedent, owned by decedent's wife but payable to The United States National Bank of Omaha as trustee of decedent's revocable inter vivos trust, are includible in the decedent's gross estate for estate tax purposes. The Tax Court, in a well reasoned opinion, held that the proceeds are not taxable to the estate of the decedent because he possessed no "incidents of ownership" with respect to the policy and possessed "no power of appointment" over the policy or proceeds. We affirm.

Robert B. Margrave died on April 29, 1973 survived by his wife, Glenda Ardelle Margrave, and children. Prior to his death and on June 16, 1966 the decedent had executed a will and established a trust known as the Robert B. Margrave Trust. The will provided in part that all his personal and household effects would go to his wife if she survived him for a period of thirty days and the remainder of his estate would be "poured-over" into the Robert B. Margrave Trust. The United States National Bank of Omaha was named executor of the will.

The Bank was also named trustee of the Robert B. Margrave Trust. Under the terms of the trust decedent retained an unqualified right to modify or revoke the trust and was the income beneficiary.

The trust agreement also provided for the creation of two other and separate trusts after the death of the decedent. One trust, the Glenda Ardelle Margrave Trust, consisted of approximately half of his estate and was largely for the benefit of the widow who had a general power of appointment. The other trust, the Robert B. Margrave

Karl P. Fryzel (argued), Tax Div., Dept. of Justice, M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Ernest J. Brown, and Jonathan S. Cohen, Attys., Washington, D. C., on brief, for appellant.

Jeffrey L. Stoehr (on brief), McGrath, North, O'Malley & Kratz, Omaha, Neb., for appellee.

* The Honorable FLOYD R. GIBSON was Chief Judge of the Eighth Circuit at the time this case was submitted and took senior status on December 31, 1979, before the opinion was filed.

Residuary Trust, was for the benefit of Margrave's children. Margrave died leaving as the only assets of the Robert B. Margrave Trust certain insurance policies on his life.[1]

On January 29, 1970 decedent's wife applied for an insurance policy on the life of her husband. The policy, a twenty year decreasing term life insurance policy with a $100,000.00 face value, was later issued on March 12, 1970 by the Western Life Insurance Company. Mrs. Margrave was the owner of record of the policy and she paid the premiums with her own funds.[2] Under the terms of the policy, all benefits, rights, options and privileges available or exercisable during the insured's life were vested in the owner. Furthermore, the bank, as trustee of the trust created by Robert B. Margrave on June 16, 1966 was named primary beneficiary of the policy.

Following decedent's death, the proceeds of the insurance policy in the amount of $84,583.00 were paid to the bank as trustee of the trust. The estate tax returns filed by the bank, however, did not include this amount. The Commissioner, relying largely on 26 U.S.C. § 2042(2) and 26 U.S.C. § 2041,[3] determined that the insurance proceeds were includible and thus added the amount of the insurance proceeds to the decedent's gross estate and issued a notice of deficiency.[4] The executor of decedent's will then petitioned the Tax Court for a redetermination of the deficiency. The Tax Court by divided vote held that the decedent possessed neither an "incident of ownership" under 26 U.S.C. § 2042(2) nor a "power of appointment" under 26 U.S.C. § 2041, and concluded that the insurance proceeds were not includible in the gross estate.[5]

On appeal the appellant first argues that the Tax Court erred in finding that the insurance proceeds were not includible in decedent's gross estate under 26 U.S.C. § 2042(2).[6] Section 2042 provides that the gross estate shall include the value of life insurance proceeds receivable by other beneficiaries to the extent that the decedent possessed at his death any of the "incidents of ownership."[7] The appellant argues that

---

1. Prior to decedent's death, there were apparently no assets transferred to the trust.

2. The decedent as the insured also signed the application for the policy.

3. The Commissioner initially believed that 26 U.S.C. § 2038 provided an alternative basis to include the insurance proceeds in the decedent's gross estate. Later, however, the Commissioner conceded that 26 U.S.C. § 2038 was inapplicable.

4. The Commissioner determined an estate tax deficiency in the amount of $11,176.45.

5. Seven members of the sixteen member Tax Court vigorously objected to Judge Tannenwald's analysis for the majority in three separate dissenting opinions. Judge Fay, joined by four other judges, contended that the insurance proceeds were in fact includible in decedent's gross estate because decedent's unqualified power to modify the trust terms constituted a general testamentary power of appointment under 26 U.S.C. § 2041. Judge Chabot concluded that the insurance proceeds were includible reasoning that the decedent's unqualified power to modify or revoke the trust falls within the ambit of 26 U.S.C. § 2042(1). Judge Quealy took the position that the insurance proceeds are not only includible in decedent's gross estate under 26 U.S.C. § 2041 and 26 U.S.C.

§ 2042, but also under 26 U.S.C. § 2042(2). He felt that decedent's power to modify or revoke the trust was an "incident of ownership" and that a decedent's power need not be vested or absolute to constitute such an "incident of ownership." Judge Goffe concurred generally agreeing with the Tax Court majority, but emphasized that the present case does not involve a prearranged plan of tax avoidance.

6. The appellant did not argue in the Tax Court that the proceeds should be included in the gross estate under 26 U.S.C. § 2042(1).

The Tax Court, however, briefly addressed this question and concluded that "there is nothing in the record to indicate that the trust was under a legal obligation 'to pay taxes, debts, or other charges enforceable against the estate.'" 26 C.F.R. § 20.2042–1(b)(1).

7. Section 2042 specifically reads in pertinent part as follows:

The value of the gross estate shall include the value of all property—

(1) Receivable by the executor.—To the extent of the amount receivable by the executor as insurance under policies on the life of the decedent.

(2) Receivable by other beneficiaries.—To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect

the decedent possessed at his death "incidents of ownership" as to the insurance policy because of the decedent's ability to change the beneficiary of the policy through his power to modify or revoke the trust. Appellant claims that the fact that Mrs. Margrave had the ultimate power to change the beneficiary of the policy does not warrant exclusion of the proceeds of the policy under § 2042(2). Noting that at the time of decedent's death Mrs. Margrave could no longer deprive Mr. Margrave of his power to change the beneficiary, the appellant concludes the decedent possessed "incidents of ownership" at the time of his death. We do not agree.

We recognize that the term "incidents of ownership" has in many instances been construed broadly. The regulation 26 C.F.R. § 20.2042–1(c)(2) provides that

> the term 'incidents of ownership' is not limited in its meaning to ownership of the policy in a technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy . . . .

Case law similarly indicates broad interpretation of the term. Courts have construed "incidents of ownership" to include

the power to change the beneficiary, see, e. g., *Chase Nat'l Bank v. United States*, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405 (1929); *Seward's Estate v. Commissioner*, 164 F.2d 434 (4th Cir. 1947); insured's right to obtain the cash or loan value where the beneficiary has been irrevocably designated, *Liebmann v. Hassett*, 148 F.2d 247 (1st Cir. 1945); or the right to transfer insurance benefits in connection with the sale of other property rights. *Commissioner v. Treganowan*, 183 F.2d 288 (2d Cir.), *cert. denied sub nom. Estate of Strauss v. Commissioner*, 340 U.S. 853, 71 S.Ct. 82, 95 L.Ed. 625 (1950). Further, courts have held that decedent's inability to exercise ownership incidents may not make them illusory, *see, e. g., Commissioner v. Estate of Noel*, 380 U.S. 678, 85 S.Ct. 1238, 14 L.Ed.2d 159 (1965). *See generally* J. Rabkin & M. Johnson, Federal Income, Gift and Estate Taxation, § 61.–05(2) (1979). We do not believe, however, that decedent's power to alter or revoke his trust and thus to designate the beneficiary of the proceeds of the life insurance policy constitutes an "incident of ownership."

We note that there was never an instant when Mr. Margrave possessed more than a mere power over an expectancy. During his life, decedent's power was subject to the absolute whim of Mrs. Margrave [8] who could completely eliminate decedent's ability to designate the beneficiary through her own power to modify or revoke the insurance policy. At his death, Mr.

---

to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. * * *

8. The Tax Court majority noted that in the present case there was no evidence of the existence of a prearranged plan. The majority observed:

Insofar as the record indicates, there was no agreement or understanding between decedent and Mrs. Margrave with respect to the disposition of the policy or of proceeds and respondent has not made any suggestion along these lines. Any attempt to infer a prearranged agreement or understanding can rest only on an automatic inference based upon the marital relationship, a course which the Court has in the past declined to pursue.

Cf. *Estate of Gutchess v. Commissioner*, 46 T.C. 554 (1966)."

Furthermore, Judge Goffe, in his concurring opinion, also could find in the record nothing supporting the existence of a prearranged plan. He noted:

To conclude, as the trial judge does in his dissenting opinion, that there was a prearranged plan, he must disregard the testimony of Mr. Schwartz. Where evidence which is competent, relevant and credible is uncontradicted the Tax Court may not arbitrarily discredit or disregard it. *Banks v. Commissioner*, 322 F.2d 530, 537 (8th Cir. 1963). In my view, the testimony of Mr. Schwartz was not improbable, unreasonable or questionable. We are, therefore, bound to accept his testimony as true.

Margrave's power to designate the beneficiary, by the terms of the trust, ceased to exist. In such circumstances we are unable to find "incidents of ownership" sufficient to include the proceeds of the insurance policy in decedent's gross estate under § 2042(2).

■ Appellant next contends that the Tax Court erred in concluding that the insurance proceeds are not includible in decedent's gross estate under 26 U.S.C. § 2041. That section provides that the gross estate includes the value of all property to which the decedent has at the time of his death a "general power of appointment." Appellant insists that the decedent's power to modify or revoke the trust constitutes a "general power of appointment."[9] Again, we do not agree.

A "general power of appointment" is defined by the Code as "a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate . . .." 26 U.S.C. § 2041(b)(1).[10]

In order for such a power to result in the inclusion of an item in decedent's gross estate under § 2041, the decedent must at least (1) possess a power within this definition of "a general power of appointment,"[11] and (2) there must be a property interest to which this "general power of appointment" attaches.

While it is clear that the decedent possessed a "general power of appointment" by virtue of his ability to modify or revoke the trust, *Maytag v. United States*, 493 F.2d 995 (10th Cir. 1974); 26 C.F.R. § 20.2041–1(b)(1),[12] we do not believe that any property interest attached to that power.

As the Second Circuit noted in *Connecticut Bank & Trust Co. v. United States,* 465 F.2d 760 (2d Cir. 1972), "at the very least, property subject to a § 2041 power of appointment must be in existence prior to the time of decedent's death." *Id.* at 764. *See also Lang v. United States*, 356 F.Supp. 546 (S.D.Iowa 1973); Rev.Rul. 79–117, I.R.B. 1979, 15, 12; Rev.Rul. 75–126, 1975–1 C.B. 296; Rev.Rul. 75–127, 1975–1 C.B. 297. Prior to his death, Margrave possessed only a power over an expectancy because the rights of the trustee to the proceeds were subject to Mrs. Margrave's power to change the designation of the trustee as beneficiary.[13] Although the death of Mr. Margrave caused the trustee's right to the proceeds to vest and create a property interest to which Mr. Margrave's power of appoint-

---

**9.** Although appellant notes that six of the dissenting Tax Court judges concluded the insurance proceeds were includible in decedent's gross estate by virtue of § 2041, appellant in his brief relies primarily on § 2042.

**10.** As various courts and commentators have noted, the definition is cast in the disjunctive, so that a person is in possession of a "general power of appointment" if he is able to exercise that power of appointment in favor of any one of the four groups of beneficiaries specified in the statute. *See, e. g., Keeter v. United States*, 461 F.2d 714 (5th Cir. 1972); *Jenkins v. United States*, 428 F.2d 538 (5th Cir.), *cert. denied*, 400 U.S. 829, 91 S.Ct. 59, 27 L.Ed.2d 59 (1970). *See generally* J. Rabkin & M. Johnson, *supra* at § 52.08(1).

**11.** For examples of powers which may constitute "general powers of appointment," *see* 26 C.F.R § 20.2041–1(b)(1); J. Rabkin & M. Johnson, *supra* at § 52.08(1).

**12.** Courts have consistently held that the right of another to revoke a "power of appointment," *see, e. g., United States v. Turner*, 287 F.2d 821, 826–27 (8th Cir. 1961), or even the

mere possession of a "general power of appointment" where decedent lacks the capacity or opportunity to exercise it can constitute a "general power of appointment" under § 2041. *Estate of Bagley v. United States*, 443 F.2d 1266, 1267 (5th Cir. 1971); *Fish v. United States*, 432 F.2d 1278, 1280 (9th Cir. 1970).

**13.** Appellant relies on *Keeter v. United States, supra*; and *Terriberry v. United States*, 517 F.2d 286 (5th Cir. 1975), *cert. denied*, 424 U.S. 977, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976), to support his theory that the fact a power of appointment is "defeasible" does not reduce its legal effect. But as the Tax Court majority noted, these cases are distinguishable. In *Keeter* the issue was not whether there was any property to which the "power of appointment" attached, but rather whether the instrument involved constituted a "power of appointment." Furthermore, *Terriberry* is distinguishable from the present case in that the decedent in *Terriberry* had direct control of the insurance policies and thus could be said to have "incidents of ownership" in the policies themselves.

ment might attach, Mr. Margrave's death simultaneously terminated his ability to modify or revoke the trust. Thus, Mr. Margrave's "general power of appointment" was at all times merely a power over an expectancy. In such circumstances, we do not believe the proceeds of the life insurance policy can be included in decedent's gross estate under 26 U.S.C. § 2041.

Affirmed.