**AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS et al., Plaintiffs,**

v.

**F. Ray MARSHALL, Secretary of the United States Department of Labor, Defendant.**

**Civ. A. No. 80–1360.**

United States District Court, District of Columbia.

Aug. 7, 1980.

J. Albert Woll, Laurence Gold, Washington, D. C., Marsha S. Berzon, San Francisco, Cal., for plaintiff AFL–CIO.

John A. Fillion, Jordan Rossen, Detroit, Mich., for plaintiffs UAW, Bulgrien, Crossman and McLellan.

Deborah Bachrach, Terry Meginniss, Jr., Steven Savner, National Employment Law Project, New York City, Geri Palast, National Employment Law Project, Washington, D. C., for plaintiffs Bulgrien, Crossman, McLellan, Patterson and Spring.

Fred H. Altshuler, Stephen P. Berzon, Evelyn Frank, Altshuler & Berzon, San Francisco, Cal., for all plaintiffs.

Alice Daniel, Asst. Atty. Gen., Charles F. C. Ruff, U. S. Atty., Mark C. Rutzick, Ellen J. Sazzman, Attys., Dept. of Justice, Washington, D. C., for defendant.

Judith K. Richmond, Chamber of Commerce of the U. S., Washington, D. C., Stanley T. Kaleczyc, Cynthia Wicker, Stephen A. Bokat, Nat. Chamber Litigation Center, Washington, D. C., for intervenor Chamber of Commerce.

## MEMORANDUM

OBERDORFER, District Judge.

This action is before the Court on cross-motions of the parties for summary judgment. For the reasons that follow, the Court grants summary judgment in favor of the plaintiffs.

The Federal-State Extended Unemployment Compensation Act[1] [the Act] was enacted in 1970. It provides thirteen additional weeks of unemployment compensation benefits to workers covered by the program when unemployment reaches certain high levels specified in the statute. Congress has provided detailed "trigger" mechanisms to indicate when extended benefits are to become available. The central element in the trigger mechanisms is the insured unemployment rate [IUR] as defined in section 203(f) of the Act.

Section 203(f) of the Act provides:

For purposes of subsections (d) and (e), the term 'rate of insured unemployment' means the percentage arrived at by dividing—

(A) the average weekly number of individuals filing claims for weeks of unemployment with respect to the specified period, as determined on the basis of the reports made by all State agencies (or, in the case of subsection (e), by the State Agency) to the Secretary, by

(B) the average monthly covered employment for the specified period.

Under section 203(d)(1) of the Act, there is a national "on" indicator for a given week when the national seasonally adjusted rate of insured unemployment in all states equals or exceeds 4.5% for a period consisting of that week and the preceding twelve weeks. The national program triggers "off" in any week when the rate of insured unemployment in all states is less than 4.5% over a similarly defined thirteen week period. In individual states, the extended bene-

1. Pub.L. 91–373, as amended, 26 U.S.C.A. § 3304n.

fits program shows an "on" indicator when the rate of insured unemployment under the state law equals or exceeds 120% of the average of the rates for the corresponding thirteen week period in each of the preceding two years, and when the state's rate of insured unemployment equals or exceeds 4% for thirteen weeks. An "off" indicator is registered when, over a thirteen week period, either the 4% or the 120% criterion is not met. Alternatively, the state may elect to pay extended benefits when its rate of insured unemployment equals or exceeds 5% over a thirteen week period without regard to the 120% criterion. In states in which this option has been elected, there will be an "off" indicator when the 120%–4% indicators are no longer met or when the rate of insured unemployment is less than 5% for thirteen weeks, whichever occurs later. The extended benefit period begins in any state the third week after there is either a state or national "on" indicator and triggers off three weeks after a week where both state and national indicators are "off". Section 203(a)(2).

In regulations issued at the time the statute was enacted, the Secretary of Labor specified that the numerator used in determining the IUR was to include all claimants for unemployment benefits whether paid under regular state unemployment compensation laws, under special state laws providing for state financed additional benefits in periods of high unemployment, or under the Act itself.[2] On January 3, 1980, the Secretary of Labor promulgated a new regulation which redefined the numerator of the trigger fraction.[3] Effective February 3, 1980, all unemployed workers claiming "extended benefits" under the Act or "additional benefits" under state law would be excluded from the calculation of that rate of insured unemployment. As a result, the States of Maine and New Jersey have triggered off the extended benefits program.

This has occurred despite an increase in the unemployment rate in New Jersey from 6.6% to 8.4% during the period that the extended benefits program was triggering off.

■ The plaintiffs claim that the regulation which redefined the IUR conflicts with the Act. As the Supreme Court has stated in a variety of contexts, a question of statutory construction should begin with an examination of the language of the statute itself. *See, e. g., Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979); *Cannon v. University of Chicago*, 441 U.S. 677, 689–690, 99 S.Ct. 1946, 1953–54, 60 L.Ed.2d 560 (1979); *International Brotherhood of Teamsters v. Daniel*, 439 U.S. 551, 564–565, 99 S.Ct. 790, 799–800, 58 L.Ed.2d 808 (1979).

■ The challenged regulation purports to interpret the words "individuals filing claims for weeks of unemployment" found in § 203(f) in such a way that would exclude individuals who were filing certain types of claims. The statute, however, appears clear and unambiguous and does not provide for,[4] nor does it require, interpretation. An individual who files a claim for benefits under the extended benefit program is no less an individual filing a claim for unemployment than one who files a claim for unemployment under the "regular" scheme. "Reinterpretation" of the phrase in question is therefore a departure from the plain language of the Act. If the Act is to be amended, Congress, not the Secretary, must do the amending.

■ More significant here is the fact that in the regulations implementing the statute issued soon after its enactment, the Secretary of Labor interpreted the words "individuals filing claims . . ." to include those filing for extended and additional benefits. 36 Fed.Reg. 46, 49 (Jan. 5, 1971).

**2.** 36 Fed.Reg. 46, 49 (Jan. 5, 1971).

**3.** 20 C.F.R. 615.12 (45 Fed.Reg. 797, Jan. 3, 1980).

**4.** Section 203(f) gives the Secretary the power to issue regulations concerning determinations made only under subsections (d) and (e). The Secretary would bootstrap that power to issue regulations concerning calculations made under subsection (f) even though such power is not provided for in the statute.

Since that time, Congress has reexamined the Act several times and has several times adjusted the trigger mechanism. For example, Congress has suspended the operation of the 120% requirement.[5] In addition, Congress in 1976 added the provision which permitted the individual states to trigger on when the IUR reaches 5%, without regard to the 120% requirement.[6] On all these occasions the 1971 regulation was before the Congress. A regulation change could have affected the amendments Congress enacted. Thus, there is evidence that, while considering these changes, Congress relied upon the fact that "individuals filing claims for . . . unemployment" would include those who were receiving extended benefits and additional state benefits.[7]

The Supreme Court has frequently held in cases such as this one arising under the Internal Revenue Code that:

> [A] long-standing administrative interpretation, applying to a substantially re-enacted statute, is deemed to have received congressional approval and has the effect of law.

*Commissioner v. Estate of Noel*, 380 U.S. 678, 682, 85 S.Ct. 1238, 1240, 14 L.Ed.2d 159 (1965). The Secretary's original contemporaneous regulation had the effect of law. Over a 10-year period, Congress has, in effect, re-enacted the Act as the Secretary had authoritatively construed it. The Act and the re-enactments, however, would have had quite different consequences if the 1971 regulation had been different. If the original regulation had been enacted directly by Congress, the Secretary's 1980 regulation would obviously be *ultra vires*. The same principle invalidates the 1980 effort to revise the 1971 regulation about which Congress has been on formal notice, and on which it has apparently relied in repeated enactments of the underlying law.

Accordingly, the Court finds that the new regulation redefining IUR is inconsistent with the Extended Unemployment Act and is therefore invalid.

5. *See* S.Rep. 94–1265, 94th Cong. 2d Sess. (1976) at 17–21, U.S.Code Cong. & Admin. News 1976, p. 5997.

6. Pub.L. 94–566 (94th Cong. 2d Sess., 1976).

7. *See* 118 Cong.Rec. 36952, 119 Cong.Rec. 22397 (Remarks of Rep. Mills).